THE PEOPLE OF THE STATE OF NEW YORK ex rel. HARRY
    COSSEY, Appellant, v. EDWARD M. GROUT, as Comptroller
    of the City of New York, Respondent.

CONSTITUTIONAL LAW — NON-COMPLIANCE WITH LABOR LAW (L. 1897,
CH. 415, § 3, AS AMD. BY L. 1899, CH. 567) AS TO HOURS OF LABOR, NO
DEFENSE TO MANDAMUS TO COMPEL PAYMENT OF AMOUNT DUE ON
MUNICIPAL CONTRACT.   A municipal contractor, who has fully performed
his contract to construct and deliver six scows to the city of New York
which have been accepted and retained by the city authorities, and for
which he has received proper certificates establishing the completion of the
contract and the acceptance of the scows by the city, may compel the pay-
ment of the amount due on the contract by mandamus, although he has
failed to comply with a stipulation of the contract by which he agreed
that he would comply with the provisions of chapter 415 of the Laws of
1897, as amended, known as "The Labor Law," so far as they are consti-
tutional and applicable and further agreed that no laborer, workman or
mechanic in the employ of the contractor, sub-contractor or other person
doing or contracting to do the whole or a part of the work contemplated
by the contract should be required to work more than eight hours in any
one calendar day, except in cases of extraordinary emergency caused
by fire, flood, or danger to life or property, since such provision is in
violation of the State Constitution with respect to the rights of a
municipality.

    People ex rel. Cossey v. Grout, 93 App. Div. 607, reversed.

    (Argued October 5, 1904; decided November 29, 1904.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered July
11, 1904, which affirmed an order of Special Term denying a
motion for a peremptory writ of mandamus to compel the
defendant to draw warrants in relator's favor for amounts
alleged to be due to him under a certain contract.

    The facts, so far as material, are stated in the opinion.

    L. Laflin Kellogg and Alfred C. Petté for appellant.   The
order appealed from is reviewable by this court. (Cohn v.
Baldwin, 141 N. Y. 563; Spies v. Lockwood, 165 N. Y. 481;
Spence v. Ham, 163 N. Y. 220; People ex rel. v. Common
Council, 78 N. Y. 56; People ex rel. v. Campbell, 152 N. Y.

27

51; *Matter of Thurber,* 162 N. Y. 244; *People ex rel.* v. *Coler,* 168 N. Y. 6.) The provisions of the statute limiting the hours of labor of employees of independent contractors for public work to not more than eight hours in any one calendar day (L. 1897, ch. 415, as amd.) are in conflict with article 1, section 1 and section 6 of the Constitution of the State of New York, and article 14, section 1 of the Constitution of the United States, and the stipulations in the contract requiring the contractor to comply therewith are illegal and unauthorized. (*People* v. *Hawkins,* 157 N.Y. 1; *Holden* v. *Hardy,* 169 U. S. 366; *People ex rel.* v. *Coler,* 166 N. Y. 1; *People ex rel.* v. *Coler,* 166 N.Y. 144; *City of Cleveland* v. *C. B. C. Co.,* 67 Ohio, 197; *Bramley* v. *Norton,* 5 Ohio N. P. Rep. 183; *Street* v. *V. E. Co.,* 66 N. E. Rep. 895; *R. I. & S. Co.* v. *State,* 66 N. E. Rep. 1005; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Marx,* 99 N. Y. 378.) The provisions of the statute are also violative of the "home rule" provision (Art. 8, § 10) of the Constitution of the state of New York, prohibiting the incurring of any indebtedness by a city of this state except for a city purpose. (*People ex rel.* v. *Coler,* 166 N. Y. 1.) The provisions in question have no relation whatsoever to the public health, safety or morals, and cannot be held valid as a police regulation. (*Colon* v. *Lisk,* 153 N. Y. 188; *People* v. *O. C. R. C. Co.,* 175 N. Y. 84; *City of Cleveland* v. *C. B. C. Co.,* 67 Ohio, 197; *Matter of Morgan,* 58 Pac. Rep. 1071; *Matter of Eight Hour Law,* 39 Pac. Rep. 328; *Low* v. *R. P. Co.,* 59 N. W. Rep. 362; *Ritchie* v. *People,* 155 Ill. 98; *Matter of Kubach,* 9 L. R. A. 482; *Fiske* v. *People,* 188 Ill. 206.) Nor can the statute, at least in so far as it is sought to be enforced against the contractor in the case at bar, be upheld as an exercise of the right of control by the state over a municipal corporation. (*Forster* v. *Scott,* 136 N. Y. 577; *Maximilian* v. *Mayor, etc.,* 62 N. Y. 160; *Ham* v. *Mayor, etc.,* 70 N. Y. 459; *Terhune* v. *Mayor, etc.,* 88 N. Y. 247; *Tone* v. *Mayor, etc.,* 70 N. Y. 157; *Smith* v. *City of Rochester,* 76 N. Y. 506; *People ex rel.* v. *Mayor, etc.,* 104 N. Y. 68; *Appleton* v. *W. Comrs.,* 2 Hill, 432; *Bailey* v. *Mayor, etc.,* 3 Hill,

538; *Walsh* v. *Trustees, etc.,* 96 N. Y. 428; *Walsh* v. *Mayor, etc.,* 107 N. Y. 220; *N. Y. & B. S. Co.* v. *Brooklyn,* 71 N. Y. 580; *Mayor* v. *T. Nat. Bank,* 111 N. Y. 446; *Missano* v. *Mayor, etc.,* 160 N. Y. 123.)  The relator in no way waived his right to question the constitutionality of the statute by entering into the contract.  (*Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 328; *People ex rel.* v. *Coler,* 56 App. Div. 98.)

*John J. Delany, Corporation Counsel* (*Theodore Connoly* and *Terence Farley* of counsel), for respondent.  The Eight-hour Law does not violate either the provisions of the 14th amendment to the Federal Constitution or section 1 of article 1 of the State Constitution.  (*People* v. *Warren,* 77 Hun, 120; *People ex rel.* v. *Beck,* 10 Misc. Rep. 77; *People* v. *O. C. R. C. Co.,* 73 App. Div. 580; *Holden* v. *Hardy,* 169 U. S. 366; *People.v. Havnor,* 149 N. Y. 195; *Atkin* v. *Kansas,* 191 U. S. 207; *Rush* v. *United States,* 33 Ct. of Claims, 417; *United States* v. *Ollinger,* 55 Fed. Rep. 959; *United States* v. *Jefferson,* 60 Fed. Rep. 736; *Coleman* v. *United States,* 81 Fed. Rep. 824.)  The Eight-hour Law is not open to the constitutional objections (1) that it operates as a denial of the equal protection of laws; (2) that it deprives a person of property without due process of law; (3) that it impairs the obligation of a contract; or (4) that it is class legislation.  (*Holden* v. *Hardy,* 169 U. S. 366; *Hancock* v. *Yaden,* 121 Ind. 366; *P. S. C. Co.* v. *State of West Virginia,* 36 W. Va. 832; *K. I. Co.* v. *Harbison,* 183 U. S. 13; *State* v. *B. & S. Mfg. Co.,* 18 R. I. 11; *People* v. *Phyfe,* 136 N. Y. 554; *Opinion of Justices,* 163 Mass. 589.)  The state has power, as guardian and trustee of the people, to prescribe the conditions upon which it will permit public work to be done in behalf of itself or its municipalities.  (*Atkin* v. *State of Kansas,* 191 U. S. 207; *Matter of Jacobs,* 98 N. Y. 98.)

CULLEN, Ch. J.  In October, 1903, the relator entered into a contract with the city of New York by the commissioner of street cleaning whereby he agreed to construct and deliver to

the city ten scows for the sum of $5,225 each. By his con-
tract the relator agreed to comply with the provisions of chap-
ter 415 of the Laws of 1897, as amended, known as the "Labor
Law," so far as they were constitutional and applicable thereto,
and that no laborer, workman or mechanic should be required
to work more than eight hours in any one calendar day except
in the case of extraordinary emergency. The relator was to
be paid from time to time in installments as the work pro-
gressed. Under this contract he constructed and delivered
six scows to the city authorities which have been accepted and
retained by those officers and he received proper certificates
establishing the performance of his work. The respondent,
the comptroller of the city, resisted payment of relator's claim
on the sole ground that the relator had permitted his work-
men to work for more than eight hours a day in the absence
of any extraordinary emergency. An application for a writ
of mandamus to compel the comptroller to pay the relator for
the scows delivered was denied by Special Term, as stated in
the order, "on a question of law only, viz., that the presump-
tion is in favor of the constitutionality of the eight hour provi-
sion of the labor law referred to in the motion papers herein,
and not in the exercise of the discretion of this court." This
order was affirmed by the Appellate Division by a divided
court. As the writ was not denied in the exercise of discre-
tion the order is appealable to this court.

The validity of the so-called labor legislation recently
enacted in many of the states has been the subject of much
litigation and controversy both in the State and in the Federal
courts. In this court there have been radical differences of
opinion among its members on the questions presented by such
statutes. Several cases have been presented to and decided by
the court. In those cases are to be found exhaustive discus-
sions of the questions involved, and the opinions there deliv-
ered show that the members of the court approached the
examination of the subject from very divergent points of view.
While, as I shall show hereafter, there is no inconsistency
between the several decisions made by us, so far as the propo-

sitions actually determined are concerned, it may be frankly admitted that in the arguments used to sustain the conclusion reached there are at times found in the opinion in one case dicta in conflict with that found in the opinion in another. None of these conflicting propositions, however, was necessary to the determination of the particular case in which it was asserted. As these cases have been so recently before the court it seems to me that no good purpose would be subserved by now reopening the whole discussion of the subject, nor does there appear much prospect that by such action we would finally reach harmony among ourselves. I think the wise course is to adhere strictly to the decisions actually made by the court without further examination of the general questions involved and regardless of the individual opinions of our several members. In this spirit I shall approach the question now before us.

The earliest case under the Labor Law which came before us was that of *People ex rel. Rodgers* v. *Coler* (166 N. Y. 1). That was an application by a contractor with the city to compel the payment of his claim. It was resisted on the ground that the contractor had failed to comply with the Labor Law so far as it required payment by him to his employees of the prevailing rate of wages. It was held that the Labor Law, so far as it required that in contracts with the municipality the contractor should agree to pay his employees the prevailing rate of wages, was unconstitutional and void, and that the contractor was entitled to payment, though he had failed to comply with that provision. That case differs from the one now before us in but one respect. There the contractor had failed to pay the prevailing rate of wages; here the contractor permitted daily labor in excess of eight hours. This difference in circumstances would not justify a distinction in principle, and, therefore, the decision in the *Rodgers* case must control the disposition of the present case, unless the *Rodgers* case has been overthrown by the subsequent cases in this court or in the Supreme Court of the United States.

In this connection it is necessary to refer to only three of

the cases cited by the counsel for the respective parties.   The
first is that of *People* v. *Orange County Road Construction
Company* (175 N. Y. 84).    That case has in reality no
bearing on the question now before us.    Section 384h of the
Penal Code made any one contracting with the state or a
municipality who should require more than eight hours work
of an employee guilty of a misdemeanor and punishable by a
fine.    As is pointed out in the opinion rendered in the case
the statute did not assume to punish a contractor for violating
his contract but for doing the prohibited act, *i. e.*, requiring
more than eight hours labor from an employee, regardless of
whether or not he had agreed by his contract not to require
such a term of labor and even though his contract might have
been made years before there was any legislation on the sub-
ject.    It was held that this penal enactment could not be sus-
tained as a police or health regulation because of the arbitrary
distinction drawn between workmen employed on a state or
municipal work and those performing similar labor under
other contracts.  · The question of the effect of a violation of
a provision of the contract not to employ workmen for more
than eight hours was not involved in the case nor passed on
by the court.

The next case to be considered is *Atkin* v. *Kansas* (191
U. S. 207).    There a statute of Kansas enacted that any one
who having thereafter contracted with the state or a munici-
pality for the performance of a public work should require or
permit any workman to work thereon more than eight hours
in a day should be punishable by fine and imprisonment.
The relator was convicted and punished under this statute.
His conviction was upheld by the Supreme Court of the state
of Kansas and the case was taken to the Supreme Court of
the United States by a writ of error.    As the case came from
the state court the only question cognizable by the Supreme
Court of the United States was whether the legislation of
Kansas was in conflict with the Federal Constitution.    The
question whether the legislation was in conflict with the con-
stitution of Kansas was not before the Federal court, nor did

that court have any jurisdiction to pass upon it. The Supreme Court sustained the conviction. It held substantially two propositions. *First,* that so far as the Federal Constitution is concerned a municipality is a mere agency of the state and subject to the absolute control of the legislature. *Second,* that the constitutional liberty of the contractor was not violated because he had no right to contract with the state or municipality except on such terms as the legislature might prescribe. This case doubtless disposes of all claim that labor legislation of the kind now before us is in contravention of the Constitution of the United States, but it does not necessarily impair the authority of the decision in the *Rodgers* case, though it does affect part of the reasoning by which the conclusion in that case was reached. The prevailing opinion in the *Rodgers* case proceeded on two grounds : 1, that the Labor Law invaded the constitutional rights of the municipality ; 2, that it invaded the constitutional rights of the contractor by depriving him of his liberty to contract with his employees and in confiscating the stipulated price for his work in case he failed to comply with its provisions. The second ground, the supposed invasion of the rights of the contractor, is entirely swept away by the decision in the *Atkin* case because, as pointed out by the Supreme Court of the United States, no man has any right to contract with the public, any more than with an individual, except on such terms and conditions as the state chooses to prescribe, and so far as any confiscation of his property, the contract price, is concerned, he never acquires any right to such payment except on the performance of the terms of his contract. The first ground of the decision in the *Rodgers* case, that the Labor Law was an unconstitutional violation of the city's rights and powers, is not, however, determined by the *Atkin* case. Though a municipality has no rights as against the state protected by the Federal Constitution, its relation to the state government and the extent of the power of the legislature to control it are to be determined exclusively by the provisions of the State Constitution, which may bestow upon a municipality

such degree of autonomy as the people see fit.   Hence, so far as the decision in the *Rodgers* case rests on this ground it is in no way impared by the *Atkin* case.

The last case we considered is that of *Ryan* v. *City of New York* (177 N. Y. 271).   That case arose under the Labor Law, the plaintiff, an employee of the city, suing for the difference between the wages actually paid him by the city and the prevailing rate of such wages.   It was there held by a majority of the court that the direction of the Labor Law that the city should pay its employees the prevailing rate of wages was constitutional and imposed upon the city officers the duty of fixing wages at the prevailing rate, but that the acceptance by the employee of a different rate and his continuance in the employment of the city at such rate constituted a waiver of all claim on his part for greater compensation.   The prevailing opinion in that case was written by the late chief judge of this court, who pointed out that there was no inconsistency between the disposition of that case and that of the *Rodgers* case, whatever conflict there might be between some of the arguments in the two cases.   The distinction between the cases, already foreshadowed in the concurring opinion of LANDON, J., in the *Rodgers* case, is this: Where the municipality lets work by contract it is interested only in the result obtained, and if that result complies with the requirements of the contract it is immaterial to the city what the contractor's employees may have been paid or how long they may have worked.   But where the municipality itself undertakes the construction of a public work it assumes the risk of success or failure in the performance of the work, and the legislature, in such control of a municipality as it has frequently exercised, for instance in directing the opening of a particular street, the building of a particular court house, the acquisition of particular land for a park and the like, might, in the belief and judgment that good work was best obtained by good pay and moderate term of labor, direct the rate of wages to be paid and the time laborers were to work, as it has done in case of state work, the validity of which

we have upheld.    (*Clark* v. *State of N. Y.*, 142 N. Y. 101.)
So, doubtless, the legislature, in the interest of economy, could
prescribe a maximum rate of wages, which the city in the
employment of labor could not exceed.    It thus appears that
there is a clearly appreciable distinction between the two cases
and that the authority of the *Rodgers* case still obtains.

If, despite the decision of the Supreme Court of the United
States in the *Atkin* case, the claim that the provisions of the
Labor Law violate the liberty or rights of the contractor is to
be treated as still open, I desire to add a few words.    I fear
that the many outrages of labor organizations or of some of
their members have not only excited just indignation, but at
times have frightened courts into plain legal inconsistencies
and into the annunciation of doctrines which, if asserted in
litigations arising under any other subject than labor legisla-
tion, would meet scant courtesy or consideration.    The notion
that a contractor can acquire any title or right to the com-
pensation stipulated by the contract to be paid to him except
on compliance with the terms and conditions upon which it
was agreed to be paid, and may successfully assert that though
he has intentionally violated his contract he is still entitled to
his compensation, seems to me one of those fallacies that
would never gain currency save in labor litigations.    If the
contract into which the relator entered with the city had not
been invalid, because of want of power in the legislature to
prescribe that character of contracts for municipalities, on
what basis would the relator's claim rest?    The city never
agreed to pay him the stipulated price absolutely and unquali-
fiedly for the boats furnished, but only on condition that he
should work his laborers thereon only eight hours, and to
this qualification or condition he expressly agreed.    Had
the Labor Law otherwise been constitutional, what possible
ground of complaint had he?    He was to be paid, not for
doing the work only, but for doing it in a particular manner,
and the contract was entire.    Who ever heard before this
a claim that the forfeiture of the value of work done
or material furnished under an entire contract by the fail-

ure of the obligor to completely perform it was an unconstitutional confiscation of property? Look at the elementary law of this state. In *Champlin* v. *Rowley* (13 Wend. 258) the plaintiff agreed to sell and deliver a hundred tons of hay. He delivered fifty tons, but failed to deliver the remainder. It was held that he could not recover for that which he had delivered. In *M'Millan* v. *Vanderlip* (12 Johns. 165) the plaintiff agreed to spin yarn for a specified price per *run* during a fixed term. He ceased work before the end of the term. Held he could not recover for the work he had done. In *Catlin* v. *Tobias* (26 N. Y. 217) the plaintiff's assignors contracted to sell and deliver to the defendant certain quantities of glass. They did furnish certain glass, which defendants used, but the deliveries were less than contracted for. Held the plaintiff could not recover for the glass delivered. In the cases cited the parties lost the value of their work or of their materials because they did not live up to their contracts. If in this case the relator should meet the same fate because he has not lived up to his contract, why would a forfeiture be unconstitutional as to him and not unconstitutional in the other cases?

But it is urged that the thing or condition in which he violated his contract was not material. To this it is a complete answer that the parties voluntarily contracted that it should be material, and that unless the relator complied with it he should get no pay. Here again the question is settled by authority, though not in suits arising under the Labor Law. *Foot* v. *Ætna Life Insurance Company* (61 N. Y. 571) was an action on a life insurance policy; defense, breach of warranty of the truth of statements made in the application for insurance. It was urged for the plaintiff that the statement alleged to be false was immaterial. To that claim this court, through Judge Earl, said : " Parties to insurance contracts have the right to make their own bargains as in other cases. * * * All the representations of the assured contained in the policy by being written therein or incorporated therein by reference to the proposal are warranties, and must be substantially true,

or the policy will be void. *It matters not whether the representations are material or not. The parties made them material by inserting them, and it matters not if the parties insured made the untrue statements innocently, believing them to be true.*" I ask if an insurance company may make such character of contract as it sees fit and by that contract may make a thing material which, in fact, is not so, why may not other parties do the same? Or rather (*this is the real question*) why is it unconstitutional for the legislature to confer on other parties the same liberty of contract and to direct that for a breach of the contract the same results shall follow in one case as in the other, even though the breach relates to a " fantastic " thing? Why is it not just as much unconstitutional confiscation that the estate of a deceased should forfeit all the premiums paid by him under a policy because of a mistake in the statement of the cause of death of his stepmother, as in the case of this relator?

I am entirely willing to accept the illustration of a contractor agreeing that his workmen shall wear black hats and shoes. The proposition on behalf of the relator then is that there is not power in government, or at least not in any government which guarantees its citizens against deprivation of property except by due process of law, to enact that a party who has agreed that, as a condition of his being entitled to receive his pay, his workmen will, in the performance of the work, wear black hats and shoes, shall by a deliberate violation of his contract in that respect, lose his right to recover. Pray why? How would it violate the inherent liberty of the person or the fundamental rights of property to compel a man to live up to his bargain even in immaterial and foolish requirements.

It is said that the decision in the *Atkin* case sustaining the validity of the appellant's imprisonment is not an authority for the proposition that his contract pay may be taken away for the same offense, and it is contended that such summary forfeiture is not " due process of law." Here again I shall refrain from discussing the subject on principle, but simply

428        People ex rel. Cossey *v.* Grout.        [Nov.,

Opinion of the Court, per Cullen, Ch. J.        [Vol. 179.

refer to what I deem conclusive authority on the question. For a century past, in this state, usury has been a crime punishable like other misdemeanors. During the same period the law has made all securities taken for the usurious debt absolutely void, and the lender forfeits to the borrower the whole amount of his loan. He can recover nothing. Yet, there is no judicial procedure taken to forfeit the lender's money. When he sues to recover his loan the borrower may set up the defense of usury, the lender is beaten and loses his money. In the present case the relator sues for his pay; the city defends on the plea that the relator has violated his contract in a respect which the law makes a ground for an entire forfeiture of the contractor's pay. If the statute were otherwise constitutional why would it be a violation of due process of law to give effect to that defense in a suit by the contractor any more than to give effect to the defense of usury in a suit by the lender? The most ingenious casuist cannot suggest a distinction in principle between the two cases in this respect.

It is finally suggested that the relator did not voluntarily assent to the obnoxious terms of his contract, but was compelled to do so. Let us return to the hypothetical case of an insurance policy. Suppose the plaintiff, in an action on the policy, in answer to the defense of breach of warranty, contended that the deceased protested against making statements as to the cause of the death of his stepmother, of which he may have been ignorant, but was compelled to do so by the company's refusal otherwise to issue the policy. No one will deny that such a claim would be too frivolous to be listened to. The claim of the relator in this respect is exactly the same, and the answer to both is that no man has a right either to an insurance policy or to a contract for work except on just such terms and conditions as the other contracting party prescribes. If one does not like the terms of an insurance policy or of a contract, his remedy is not to accept it. The decision about to be made can, therefore, stand only on one ground, the unconstitutional interference of the legislature with the right of the municipality. That proposition

having been explicitly decided in the *Rodgers* case, I feel it my duty to follow it regardless of my own opinion on the question.

The orders of the Special Term and the Appellate Division must, therefore, be reversed and the application for the writ of mandamus granted, with costs in all the courts.

O'BRIEN, J. I agree with Chief Judge CULLEN that the statute interposed as the sole defense to the relator's claim is void for the reason that it violates the State Constitution, but I do not concur in all the reasons and arguments upon which a perfectly correct conclusion seems to be based. My reasons for concurring in the general result and dissenting from at least one proposition in the opinion are these:

We certainly decided in the *Rodgers* case that this same statute which required the contractor at the peril of forfeiting all the fruits of his contract to pay to his workmen what is termed the prevailing rate of wages was in conflict with the Constitution, and, therefore, void. There cannot, of course, be any sound distinction between the clause of the statute which attempts to regulate wages and the clause which attempts to limit the hours of work. Both provisions were enacted at the same time for the same or similar purpose and any valid reason for condemning the former applies to the latter. Moreover, the *Rodgers* case when decided had the support of a previous decision of this court (*People ex rel. Warren* v. *Beck*, 144 N. Y. 225), and was followed and recognized as the law until the *Ryan* case was decided, which introduced the distinction between the city itself as the employer of labor and the contractor. (*People ex rel. Treat* v. *Coler*, 166 N. Y. 149; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 8; *People ex rel. North* v. *Featherstonhaugh*, 172 N. Y. 112.) I will not stop to consider or make any comments upon that distinction. My views in that regard appear in the report of the case. I will only add now that the distinction, even if sound, can be of no practical importance, since the city can always circumvent or evade it by employing contractors.

430    People ex rel. Cossey v. Grout.    [Nov.,

Opinion per O'Brien, J.    [Vol. 179.

One of the grounds upon which the *Rodgers* case rests is that the statute there considered and now before us deprived the contractor of his property without due process of law, and the learned chief judge, as I understand the opinion, asserts that this ground has been entirely swept away by the case of *Atkin* v. *Kansas* (191 U. S. 207). I do not concur in that view. Since that case is being constantly cited as authority for all kinds of paternal legislation, it may not be amiss to analyze it to the end that we may know just how far it goes and what it decides. It is certainly important to know how far it overrules any of the principles involved in the decision of the *Rodgers* case, since it is not at all likely that this is the last case that will come before the court arising out of these labor controversies. The learned chief judge states in his opinion that our statute and the Kansas statute are substantially the same. That is a very important point in the discussion. With great respect I must say that in this he is, as I think, greatly mistaken. There is a very wide difference between the two statutes in their scope and purpose, as will be seen upon careful examination and reflection. That will be quite apparent when we consider what the two statutes accomplish or attempt to accomplish and the bearing of our own statute upon this case.

It is an undisputed fact that the relator in this proceeding delivered to the city property, the contract price of which exceeded $28,000. The relator furnished this property at his own expense and the city now has it and uses it as its own. The statute, so far as the relator is concerned, confiscates this property, since it deprives him of the right either to have it returned or to enforce collection of the purchase price. It permits the city to declare the contract null and void, to retain the property and grants it immunity from any obligation to pay and furnishes a defense to any suit or proceeding brought by the contractor to recover the contract price. The city has agreed to pay for the property, but the statute now before us forbids such payment and furnishes the city with a good defense if the law is valid. All this is sought to be

accomplished, not by any judicial proceeding or legal process, but by a legislative edict " as sweeping and relentless as the torch of Omar." It would seem to be scarcely possible that any one could argue himself into the belief that such a law does not violate the constitutional guaranties for the protection and security of private property and the sacredness of contracts. It is difficult to see how any court could hold that such a law does not interfere with property rights, contract obligations and all remedies for their enforcement, but, as I understand the opinion, just such a decision is imputed to the highest court in the land, since it is asserted that one of its decisions has swept away all ground for the claim in this case and from our judgment in the *Rodgers* case that the statute in question deprives the contractor of his property without due process of law.

In my opinion the *Kansas* case does not decide any such proposition and does not sweep away what we held in the *Rodgers* case, and should hold in this case, namely, that the statute in question violates the Constitution of the state in that it deprives the relator in this case, as it did the relator in the *Rodgers* case, of his property without due process of law. In order to get a clear view of the question before the Federal court and what the case decides, it ought to be examined with some care. The learned chief judge is quite correct when he states that only one question was before the court, and that was whether the state statute violated the Federal Constitution in that it deprived the defendant in the case of his *liberty* without due process of law. It certainly did not assume to deprive him of anything else. The court had before it for construction a statute widely different from our own, since the only remedy prescribed for its enforcement was by indictment and criminal prosecution. It was a criminal case, based upon a criminal statute, that obviously contained no such drastic remedies for enforcement as are to be found in the statute now before us. It did not assume, as our statute does, to destroy or confiscate the contractor's property, or to annul his contract, or to deprive him of any

432     People ex rel. Cossey *v.* Grout.     [Nov.,

Opinion per O'Brien, J.     [Vol. 179.

remedy for the collection of the fruits of his contract. It did not touch the contract at any point, nor the money earned upon it. It simply subjected his person to incarceration for violation of the law, and after conviction all his remedies against the city for collecting the price of his work were left intact. He could enforce his claim against the city for the money earned on the contract just as well after conviction as he could before. The wide difference between the Kansas statute and our own will thus be seen at a glance. The former simply punishes the contractor for a specific act or omission, while the latter deprives him of all property rights under his contract, which with us frequently amounts to thousands and even millions of dollars.

The *Kansas* case decides nothing except the single proposition that the defendant in the case having voluntarily entered into the contract was not deprived of his personal liberty by the statute. That was the sole question before the court and the decision does not conflict in the least with anything decided in the *Rodgers* case, except possibly what was there said with respect to the personal liberty of the contractor so far as that was supposed to be involved in the right to make contracts with his workmen. There is not a word in the opinion of the court, as I now recall it, with respect to the effect of the statute upon the property rights of the contractor, and for the plain reason that the statute did not assume to disturb or interfere with these rights at all. How very different then is that case from the *Rodgers* case and the case at bar? It is quite conceivable that a statute may be good which assumes to punish a municipal contractor for violation of some law in the execution of the contract, but it would not follow by any means that it would also be valid if it assumed to deprive the contractor of all rights under the contract when executed. The legislature has the undoubted power to punish a person criminally for shooting game out of season in this state, but if it should attempt to deprive him at the same time, summarily, of the ownership of his gun, a very different question would be presented. The legislature has ample power to

make it a crime for a person to disturb his neighbor's oysters lawfully planted in public waters, or to remove the stakes or buoys placed in the water to mark the locality where the oyster beds have been so planted, but it has no power to confiscate the boats or other water craft used in unlawfully removing the oysters and thus violating the statute. (*Colon v. Lisk*, 153 N. Y. 188.) Such cases illustrate the distinction between statutes that assume to punish as crimes forbidden acts and those that assume to confiscate property or to destroy the obligations of contracts. The Kansas statute punishes an act or omission as a crime, while our statute attempts to confiscate property. If I have succeeded in showing in this brief review of that case that it does not decide any such proposition as is claimed, it is quite unnecessary to extend the discussion.

There is, however, one feature of that decision which although not discussed at all in the opinion, is of considerable interest, and that is what seems to be the practical concession on the part of the court of the omnipotence of a state legislature in the creation of new crimes. It is virtually held that the Kansas legislature had the power to make it a crime for a municipal contractor to *permit* his employees to work five minutes more than eight hours in the day even though the servant wanted to work and the employer was willing to pay extra wages. Of course if the legislature could make it a misdemeanor to permit this, it could make it a felony, and if all this is so there would seem to be no limit to the power of a state legislature in that respect. Whatever may be the law of Kansas, or the law in the Federal courts in that respect, it is quite certain that this court has held that the power is limited and that the legislature has no power to denounce as crimes acts which in their nature and consequences are innocent and harmless. (*People* v. *Gillson*, 109 N. Y. 389; *People* v. *Arensberg*, 103 N. Y. 388; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Hawkins*, 157 N. Y. 1; *Matter of Jacobs*, 98 N. Y. 98.)

28

It is quite true that this court has recently held that the
legislature could make it a criminal offense for a baker to
permit his workmen to work more than ten hours in the day
(*People* v. *Lochner*, 177 N. Y. 145), but the struggle in that
case was to make what some of us thought was a labor law a
health law, and so within the police power.   Nothing of that
kind was claimed for the Kansas statute, or is claimed.
Indeed it was expressly held that it could not come within
that class of statutes enacted for the promotion or protection
of health.   But this is a digression that has little, if any, bear-
ing on the case at bar.   The only question that we are now
concerned with is this : Does the case of *Atkin* v. *Kansas*
decide that the statute now before us, and which was before
us in the *Rodgers* case, is free from the constitutional objection
that it deprives the contractor of his property without due
process of law ?   In my opinion it does not and could not,
since no question of that kind was presented by the statute or
by the case, and so I conclude that that decision has not swept
away one of the most important grounds upon which one of our
own decisions rests.   The fallacy of the argument that gives
such effect to the *Kansas* case consists in the assumption that
because the court held that the Kansas statute does not unduly
interfere with personal liberty, it, therefore, held that our
statute does not invade the rights of private property.   There
was no question in the case in regard to the deprivation of
the contractor of his property.   It is obvious that a case
which deals only with the question of personal liberty cannot
be an authority to overthrow our decision in the *Rodgers* case
based as it was upon an entirely different statute, which
invades and was held by us to invade the constitutional safe-
guards of private property.   When we consider that the
Kansas statute was not aimed at the contractor's property and
does not interfere in the least with his contract or its fruits,
or deprive him of the right to sue upon it, or authorize it to
be canceled or destroyed, and that our statute expressly does or
attempts to do all these things, thereby providing for the
destruction of all the contractor's property rights, even to the

extent of forbidding any municipal officer to pay him for his work, the wide difference in the destructive power of the two statutes must be apparent.   The only reason why the present case is now before us is that the city authorities refused to pay the relator the contract price of the property which he delivered to the city and which the city retains and uses as its own.   Except for this statute the comptroller would have paid the claim, and his excuse for refusing to pay contained in the record is simply that the statute forbids him to pay and makes it a public offense if he does.   Hence, I think it is plain that the decision in the *Kansas* case did not and could not sweep away any support which the *Rodgers* case has in the proposition that our statute violated the Constitution in that it deprived the contractor of his property without due process of law.

I have a word to say with respect to the latter part of the opinion.   The proposition that a law cannot be unconstitutional which simply requires a party to perform his contract before he can recover upon it cannot of course be disputed, and if that is what this statute means, and all it means, it is probably about as harmless and useless a law as ever was enacted.   I assume that the legislature never supposed that it was necessary to pass a statute forbidding a party to enforce a contract that he had himself violated or had not performed. That has been the law from time immemorial, and of course is the law still.   If the relator in this case has not performed his contract, he cannot recover and is entitled to no relief.   If he has not performed his contract it is not of the slightest consequence whether the statute in question is constitutional or not.   In that aspect of the case, the statute is not involved in the discussion.   But the relator has performed his contract. He has produced and delivered to the city the property which was the subject-matter of the contract and the city neither refused to accept nor offered to return it, or made any objection on the ground of non-performance.   Even if such an objection could survive delivery and acceptance of the property, it would have no basis whatever in the facts of this case.

436     People ex rel. Cossey *v.* Grout.     [Nov.,

Opinion per O'Brien, J.     [Vol. 179.

If we inquire wherein or in what respect the relator has failed to perform, the answer is that he stipulated not to permit his workmen to work more than eight hours a day. That is the head and front of his offending. That is the breach and the only breach that is claimed. It was not of the slightest consequence to the city whether he permitted his workmen to labor eight hours or nine, so long as he produced and delivered the property that he agreed to deliver. It is a fair test of the importance of that objection to inquire whether the city could have maintained any action against the contractor for the so-called breach. Of course, it could not, for the plain reason that the act of the relator in regulating the hours of work was immaterial and entirely foreign to the subject-matter of the contract. If the contractor had stipulated that his workmen should wear black hats and boots instead of shoes, a breach of that condition, if it is a condition, would not furnish the city with any cause of action or any ground of defense. The obstacle that is in the relator's way when he seeks to recover the $28,000 which the city agreed to pay him as the price of the property delivered is not the stipulation in the contract, but the statute. I doubt if any one would even suggest that if there was no eight-hour statute that the stipulation in the contract would be regarded as of the slightest importance. A breach of contract can never be urged as a cause of action or defense unless the breach is of some stipulation that is material considering the subject-matter of the contract. Stipulations with respect to some extraneous matter, or such as that now under consideration, are not material.

Finally it ought to be observed that this very question was presented, discussed and decided in the *Rodgers* case. The last paragraph of the opinion is devoted entirely to that question, and it was held that the omission on the part of the contractor to keep this stipulation was entirely immaterial, and no obstacle to his right to enforce the contract. We held that if the statute was not valid the stipulation was not binding, and I fail to find anything in the *Atkin* case that overrules what we then decided in that regard.

HAIGHT, J. (dissenting). I did not agree to the conclusion reached by this court in the case of *People ex rel. Rodgers* v. *Coler* (166 N. Y. 1), but after that decision I regard it my duty to yield obedience thereto and to follow it in cases involving the question then raised and disposed of. But, to my mind, very different questions are now presented. That case involved the constitutionality of the provision of the Labor Law requiring contractors upon public works to pay their employees the prevailing rate of wages. The case now before us calls for a determination as to whether the provision of the Labor Law is constitutional which prohibits contractors upon such works from requiring more than eight hours of labor in a day from their employees. The power of the legislature to enact laws based upon considerations of public policy or for the protection and preservation of the health of the people is beyond question. It may limit the number of hours that a person shall be required to work in underground mines, smelters or institutions for the refining or reduction of ores and metals. It may limit the period of service where the person performing the labor is required to work beneath the surface of the earth or in other places where the operative is deprived of fresh air and sunlight and is frequently subjected to foul atmosphere, a very high or low temperature, or to the influence of noxious gases. It may also limit the hours of labor that shall be performed by employees in bakeries. (*People* v. *Lochner*, 177 N. Y. 145; *Holden* v. *Hardy*, 169 U. S. 366.) The requiring of a person to work twenty hours out of twenty-four, or of twelve hours per day in the digging of a deep sewer, or in the sweeping and cleaning of a street in extremely hot or cold weather, or in the lifting of heavy stones, or other work requiring violent exercise of the body and the muscles thereof, may impair the health of the individual. It might not be deemed wise public policy to permit a contractor upon public works to require ten or twelve hours service in a day while a municipality for similar services could exact but eight hours. The state, in enacting laws, must act in accord-

ance with the common experience of mankind and within reasonable bounds, and when so acting it determines, either in the exercise of its police powers in the promotion of health or as a matter of public policy, that the general welfare of employees, mechanics and workmen, upon whom rest a portion of the burdens of government, will be subserved by limiting the hours of labor to be performed to eight continuous hours per day, and that such limitation will promote their morality, physical and intellectual condition.   I think the courts cannot properly say that the limitation is unreasonable or that it violates the provisions of the Constitution.   (*Atkin* v. *Kansas*, 191 U. S. 207.)

Neither the question of public policy nor of the health law was raised or determined in the *Rodgers* case, and, therefore, I do not regard it as controlling upon the determination of the questions raised in this case.

WERNER, J., concurs with CULLEN, Ch. J.; MARTIN and VANN, JJ., concur with O'BRIEN, J.; HAIGHT, J., reads dissenting opinion; GRAY, J., absent.

Orders reversed, etc.