(159 App. Div. 241.)

### SUNDSTROM et al. v. STATE.

(Supreme Court, Appellate Division, Third Department.   November 26, 1913.)

1. CANALS (§ 15*)—CONSTRUCTION CONTRACTS.

Where a contract for the construction of a state barge canal provided that the estimate of quantities was approximate only, bidders being required to form their own judgment as to quantities and the character of the work, and that the contractor should make no claim because any of the estimates proved erroneous, a contractor is not entitled to extra compensation because the waters from an adjacent state canal leaked into his cut and caused extra work; the presence of the other canal being one of the risks of the work which the contractor is presumed to have considered in making his bid.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15, 16, 18, 19; Dec. Dig. § 15.*]

2. STATES (§ 108*)—CONSTRUCTION CONTRACTS—CLAIMS.

A state contract provided that no laborer, except in case of emergency, should be permitted or required to work more than eight hours a day; such stipulation being required by the Labor Law.   Thereafter the Labor Law was held unconstitutional, but the contractor performed his work in accordance with the contract stipulation.   Held that, because he could have done the work cheaper by working his men longer hours, he was not entitled to additional compensation from the state.

[Ed. Note.—For other cases, see States, Cent. Dig. § 106;   Dec. Dig. § 108.*]

3. ESTOPPEL (§ 62*)—ADMISSIONS—WHAT CONSTITUTES.

Where contractors upon state work, who were bound to complete it within a stipulated time under provisions for liquidated damages, asked an extension, admissions by the state engineer, for the purpose of a friendly adjustment, that the state had caused delays have no binding force otherwise and do not estop the state from its right to have the question of delay determined in an action for the liquidated damages.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153;   Dec. Dig. § 62.*]

4. STATES (§ 107*)—CONTRACTS—WAIVER—WHAT CONSTITUTES.

Where contractors upon state work were delayed three months because the contract was not signed, their subsequent execution of the contract was a waiver of that delay.

[Ed. Note.—For other cases, see States, Cent. Dig. § 105;   Dec. Dig. § 107.*]

5. COMPROMISE AND SETTLEMENT (§ 5*)—WHAT CONSTITUTES.

A state contractor, who was bound to complete the work within a given time under liability for liquidated damages for delay, requested an extension of time claiming that the delay was due to the wrongful act of the state.   Held that, where the parties agreed on an extension of time based on admissions by the state engineer, the extension constituted a compromise and settlement barring a claim for the state's delay, as the waiver of the state's right to have the question of delay determined in an action for the liquidated damages was a sufficient consideration for the adjustment.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16;   Dec. Dig. § 5.*]

6. CANALS (§ 15*)—CONTRACTS—CONSTRUCTION CONTRACTS.

Where a contract for the construction of a state canal did not require the construction of wash walls but provided that when the prism should have been fully excavated and trimmed, and on being so ordered, the protection work should be placed on the inside faces, the state did not have

_____
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to order the wash walls until the prism of that part of the canal covered by the contract was completed.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15, 16, 18, 19; Dec. Dig. § 15.*]

7. CANALS (§ 15*)—CONSTRUCTION.

Where a contract for the construction of a canal provided that the state engineer should be the sole judge of the suitableness of materials taken from the excavation for use by the contractor, his determination, in the absence of caprice or bad faith, is conclusive.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15, 16, 18, 19; Dec. Dig. § 15.*]

8. EVIDENCE (§ 83*)—PRESUMPTIONS—OFFICERS.

There is no presumption of bad faith on the part of public officers.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

9. STATES (§ 209*)—CONTRACTS—ACTIONS FOR EXTRA COMPENSATION—BURDEN OF PROOF.

Where state contractors claimed additional compensation because they were required to prepare the concrete with a particular mixer, they have the burden of proving that they suffered by reason of the arbitrary action of the state.

[Ed. Note.—For other cases, see States, Cent. Dig. § 200; Dec. Dig. § 209.*]

10. STATES (§ 209*)—CONSTRUCTION CONTRACTS—PRESUMPTION.

It must be presumed that experienced contractors upon public works know that they will meet arbitrary rulings on questions of detail, and that they must make allowances therefor in filing their bid.

[Ed. Note.—For other cases, see States, Cent. Dig. § 200; Dec. Dig. § 209.*]

11. CANALS (§ 15*)—FUTURE PROFITS.

Where a guard gate could not be constructed in that portion of the barge canal which was excavated by claimants, claimants are not entitled to compensation for a loss of prospective profits which they might have made in constructing the gate.

[Ed. Note.—For other cases, see Canals, Cent. Dig. §§ 15, 16, 18, 19; Dec. Dig. § 15.*]

Appeal from Board of Claims.

Claim by Charles Sundstrom and Frank M. Stratton against the State of New York. From a judgment allowing some of the claims and disallowing others, both parties appeal. Reversed in part, and otherwise affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Kellogg & Rose, of New York City (L. Laflin Kellogg and Franklin Nevius, both of New York City, of counsel), for claimants.

Thomas Carmody, Atty. Gen. (Irving D. Vann, of Albany, of counsel), for the State.

WOODWARD, J. A judgment in this case was originally allowed by the Board of Claims on the 3d day of January, 1913, allowing certain items of a claim consisting of 52 different items. The state desired to appeal from only three of these items, and in order that the

claimants might obtain their money on the others, and to save interest, a stipulation was entered into by which a new judgment or judgments were entered, dividing the original judgment into two parts or causes of action, known as determination No. 1 and determination No. 2; the latter only being involved in this appeal. Determination No. 2 disallows all other items of the claim save items 46, 47, and 48. These three items all involve the same point; the claimants contending that they are entitled to recover the alleged increased cost of excavation due to the flow of water from the old Champlain Canal in the sum of $38,444.34, for the increased cost of pumping, due to flow of water from the old Champlain Canal, in the sum of $7,363.01, and for the cost of removal of slides, due to the same cause, in the sum of $14,-912.61. These have been allowed by the Board of Claims, and the state appeals from the judgment in so far as these items are concerned; and we are of the opinion that the Board of Claims is in error in making these allowances.

[1] The theory upon which these claims have been allowed is that there was a material leakage from the old Champlain Canal, which was in the immediate neighborhood of the Barge Canal, a section of such Barge Canal being the subject of the contract under which these claims arose, and that such leakage operated to increase the cost of the work to the contractors. There are cases, no doubt, where, by the action of the owner or possessor of premises, the cost of doing contract work is increased, and under proper circumstances the party causing the added cost may be called upon to compensate for the damages occasioned, but this is not such a case. The state of New York was called upon to construct about 450 miles of Barge Canal, involving an expenditure of at least $100,000,000, and to accomplish this work it was divided up into sections, and contracts were let from time to time for the work upon these various sections, among them being the contract now under consideration. Among the provisions of the particular contract we find that it was provided that:

"The estimate of quantities is to be accepted as approximate only, proposers being required to form their own judgment as to quantities and character of the work by personal examination upon the ground where the work is proposed to be done, and on the specifications and drawings relating thereto, or by such other means as they shall choose."

It was further provided that:

The "attention of persons intending to make proposals is specifically called to paragraph 8 of the form of contract, which debars a contractor from pleading misunderstanding or deception because of estimates of quantities, character, location or other conditions surrounding the same."

Paragraph 8 of the contract provides:

"The contractor agreed that he has satisfied himself by his own investigation and research regarding all the conditions affecting the work to be done and labor and material needed, and that his conclusion to execute this contract is based on such investigation and research, and not on the estimate of quantities or other information prepared by the state engineer, and that he shall make no claim against the state because any of the estimates, tests or representations of any kind affecting the work made by any officer or agent of the state may prove to be in any respect erroneous."

There are other provisions dealing more in detail and enforcing this idea to a greater or less extent, but it seems to us entirely clear that the contractors in the present instance are fully estopped by the provisions already quoted, and that they have no possible claim against the state of New York because, after excavating to a considerable depth, they found water flowing into the prism of the Barge Canal which they claim came from the old Champlain Canal in the near vicinity and which added to the work and to the cost of the excavation.

The Champlain Canal is one of the old canals of the state and was situated partly upon and partly just east of the site of contract No. 3 (the one involved in this litigation) and at a higher elevation. From about the southerly gates of lock No. 6 on contract No. 3, about station 152 to station 164, the Champlain Canal was within the lines of the prism of the Barge Canal, and a part of the work to be done under the contract was the construction of a temporary canal to take care of the traffic of the Champlain Canal. From station 164 to the north the Champlain Canal bears to the east, and at station 174 is about 300 feet distant from the easterly bank, and runs away to a distance of about 800 feet and then gradually returns until it practically intersects the Barge Canal at station 255. A portion of this intervening space was to be filled with the spoil taken from the prism of the Barge Canal, and it will be seen that it was practically upon the site of the contract, and it is idle to contend that this was not one of the conditions to be examined, "upon the ground where the work is proposed to be done," by the contractor in making up his mind whether he wanted to take the contract. The fair reading of the contract requires the contractor to personally visit the site of the contract and to satisfy himself "by his own investigation and research regarding all the conditions affecting the work," and he cannot be heard to say that he did not know of the presence of the Champlain Canal or of the possibility of its leaking and causing the flow of water into the prism of the Barge Canal upon a lower level. This was one of the things the state had a right to contract for; it had a right to impose the risk of unknown conditions upon individual contractors, who might personally investigate the special conditions; and the presumption is that the contractor took these risks into consideration and made his bid upon the basis of such risks. Kinser Construction Co. v. State, 204 N. Y. 381, 394, 97 N. E. 871. It might be, of course, if the state had, after the work was under way, taken some affirmative action, such as cutting the banks of the Champlain Canal and permitting the water to flow down into the prism, there would be cause for complaint, but where the state has simply contracted for certain work in a certain locality, and has stipulated that the contractor shall take the risks of quantities, conditions, etc., it is not the law that he can recover for alleged additional cost of doing the work which results from a condition which the state was not bound to know and which the contractor had stipulated that he had taken into consideration, after a personal investigation, in making the contract. The reasoning in the case of Kinser Construction Co. v. State, supra, seems to us conclusive upon this point, and the judgment, in so far as it is in favor of the claimants, should be reversed.

We come, then, to the claims which have been disallowed, and as to which the contractors appeal. Two claims, aggregating $261,621.73, are asserted for increased cost of performance of work, occasioned by delays due to acts, omissions, and faults of the state and state officers, and for increased cost of pumping during increased time of performance, as occasioned by the wrongful acts, omissions, or faults of the state. These are known as items 28 and 29. Another claim is for increased cost of work due to enforcement of the eight-hour labor requirement, aggregating $93,476.34, and known as item 27. There is still another, item 43, for increased cost of riprap, wash wall, and concrete, due to refusal of the state to permit the use of suitable stone from the canal prism, and this claim aggregates $59,686.76. Item 49 is for alleged increased cost of concrete work due to requirement as to use of particular mixer, and the claim is for $29,149.82. Item 50 claims $32,192 for alleged increased cost of disposal of excavated material due to the refusal of the state to permit disposition at points shown on plans, and then there is a claim of $5,172, a duplication of a portion of items 44 and 45, which is claimed upon another theory. All of these matters have been disallowed, and the questions now under consideration relate to the proper disposition of the appeal as it relates to the claimants.

[2] Under item 27 there is a claim for $95,794.79 alleged to have been caused by reason of the provision in contract No. 3, insisted upon by the state, that the contractor should stipulate and agree that "no laborer, workman or mechanic in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by this contract shall be permitted or required to work more than eight hours in any one calendar day, except in case of extraordinary emergency caused by fire, flood or damage to life or property." It is conceded that this clause was inserted under the provisions of the Labor Law (Consol. Laws 1909, c. 31), declared unconstitutional by the Court of Appeals, in People ex rel. Cossey v. Grout, 179 N. Y. 417, 72 N. E. 464, 1 Ann. Cas. 39, and that no change was made in the contract after the determination of the court; but the contention of the claimants that their bid was made upon the basis of ten-hour labor does not find support in the evidence, and the claimants can hardly be heard to urge that, having consented to the making of a contract with this provision in it, and which provision, as against the contractors, was not unlawful, they are entitled to charge the people of this state over $95,000 more than they agreed to pay for the performance of this labor. It must be presumed, with this clause in the contract, that the price of the work was based upon an eight-hour day. As against the state this might not be a proper contract, and there might be some force in the contention that the people of the state were entitled to have the work done upon the basis of a ten-hour day, and that they could not properly be charged with the increased cost between an eight-hour and a ten-hour day, but for the contractors to contend that having agreed to do the work at a given price, based upon an eight-hour day, they are now entitled to charge for the work the difference between the cost at that price and what it would have cost

if they had been permitted to work ten-hour days is certainly a novel contention and one which can have no support in any just or equitable law. If the claimants had performed the work, employing their laborers ten hours per day, it is probably true that the state would have been bound to pay the contract price of the work, notwithstanding the fact that this would have been advantageous to the contractors; but having performed the work under the provisions of the contract, with some unimportant exceptions, the contractors certainly have no claim against the state because they might, by violating the provision, have performed the work for less money. So far as the claim for increased cost under the provisions of the Labor Law is concerned, the judgment is clearly right and should be affirmed.

[3-5] We now come to item 28, which is a claim for $241,439.56 claimed to be due to the acts, omissions, and faults of the state. Contract No. 3 provided that the work should be completed by April 15, 1907, and a penalty was provided for a failure to perform within the time limited. The work had been delayed by circumstances for which the contractors were not blamable, and they accordingly requested the canal board to give an extension of time. The state engineer and surveyor made a report to the canal board, in which he detailed various delays, closing with the statement that there had been a "total delay of 19½ months for the contractor without any responsibility on his part," up to the 16th of May, 1907, and that "under these circumstances it is respectfully recommended that the contractor be granted an extension of time for the completion of contract No. 3 from April 15, 1907, to December 1, 1908." Acting upon this recommendation the canal board duly authorized an extension of contract No. 3, and an agreement, known as "contract No. 3, Barge Canal alteration No. 6, change of date for completion of the work," was entered into on the 5th day of June, 1907. The agreement recites that:

"This alteration agreement is for the purpose of adjusting the matter of delays in progressing the work, to which the contractor has been subjected by the state, and of fixing a new date for the completion of the work under the contract."

After setting forth the causes of delay, and summarizing the same, the agreement continues:

"The contractors having been delayed, by causes for which they were not responsible, for a total of 19½ months, as certified by the state engineer and surveyor to the canal board, and the canal board having recommended a settlement with the contractors for injuries thus sustained by them by such extension, the time is hereby so extended. The operation of clause 17 of said contract for the payment by the contractors to the state of 'liquidated and adjusted damages' is suspended until December 1, 1908; this change in completion date is contingent upon the sureties on said contract assenting to such extension of time. In consideration of the extension of time herein provided for, the contractors waive any and all claims to other consideration on account of delays and hindrances to which they have been subjected by the state in progressing their work."

The above agreement was signed by the contractors, as found by the Board of Claims, and we are clearly of the opinion that this amounted to an adjustment of all questions of damages by reason of

the alleged acts of the state up to that time, and that it was founded upon a sufficient consideration. While it is true that the state engineer and surveyor had admitted these delays, and which, if due to the wrongful act of the state, would have entitled the contractors to an extension of time equal to the delays, this admission did not estop the state to have it determined, in a litigation involving the liquidated damages, whether these delays were due to any wrongful action on the part of the state. The admissions were made for the purpose of justifying the extension of time asked for by the contractors and for the purposes of a friendly adjustment of the points of difference between the state and its contractors and had no binding force upon the state except for the purposes of the agreement subsequently entered into by the contractors accepting the extension of time and waiving their claim, if any, to further consideration. We doubt very much if the finding of fact No. 167, at page 59, is justified by the evidence; but in view of the conclusions of law 40 to 47, both inclusive, it does not seem very material. There was evidently a matter of at least three months of the delay which was due to the fact that the contract was not signed, and the contractors, by signing the contract subsequent to its date, must be deemed to have waived this, and the state could not be charged with damages for such delay. It is clear that there were matters of dispute between the state and the contractors; the contract had not been performed, and there was a stipulation on the part of the contractors to pay liquidated damages, and the questions of delay entered into the question of the legal right of the contractors to an extension of time; and when we find that the extension was more than the time which the state had, by its fault, delayed the contractors, there was clearly an adequate consideration for the adjustment agreement. The state engineer and surveyor did not certify that the delays were due to faults on the part of the state but merely that the delays were not due to the fault of the contractors, and the state had a right to litigate the question of these delays and could not be bound by the mere assertion of its state engineer and surveyor, made for a particular purpose. We are of opinion so far as the judgment relates to the matters covered by the delays during the 19½ months it is entirely justified, and that the conclusions of law above mentioned are correct.

[6] While we agree with the conclusion reached, we are unable to concur in the opinion of the learned chairman in respect to the wash wall, where he says:

"We do not think the contract required the total completion of the canal prism, as, for instance, where it passed through rock cut, before the state was compelled to determine if wash walls were necessary."

The specifications, which constituted a part of the contract, provided (section 188) that the "wash wall will be built as follows: When the prism of the canal shall have been fully excavated and trimmed, and upon being so ordered, the protection work shall be placed on the inside faces of the canal slopes," etc. The language is clear; "when the prism of the canal shall have been fully excavated and trimmed," the state is to have the option of ordering the wash walls if it so elects. This clearly means, when the prism of that part of the canal covered

by the contract is completed, the state shall be permitted to determine the question of wash walls, and it is not required to be on hand at the completion of every section to determine the necessity of such walls. However, the Board of Claims has disallowed the claim upon the ground that the state has a reasonable length of time in which to determine the question and has held that in the particular case there was no abuse of this option, and we conclude upon the broader ground that this disposition of the matter is such as to support the judgment.

[7, 8] This brings us to item 43, under which the contractors claim something over $59,000 for increased cost of the work owing to the refusal of the state to permit of the use of suitable stone taken from the canal prism. Under the terms of the contract all of the materials found upon the premises or taken from the excavations were declared to be the property of the state, but it was provided that the contractors might use such material taken from the excavations as should be proper for the riprap, wash walls, and concrete work. It was likewise provided that the state engineer should be the sole judge of the suitableness of the materials to be used; and, while this would not permit him to act arbitrarily or capriciously, in the absence of evidence of bad faith on his part his determination would be conclusive. There is a conflict of evidence as to the character of the stone taken from the excavation, though it would appear that some of it would have been proper for use in the work. The difficulty with the contractors' case is that the evidence fails to show that any considerable portion of the stone was fit for the work, and it appears that some of it was actually used with the consent of the engineer. This would seem to indicate that all that was proper to be used was used, for there is no presumption of bad faith on the part of public officials, and it does not appear clearly that the proportion of good stone to shale and dirt was large enough so that any of it, beyond what was used, could have been used to advantage, and it ought not to be the policy of the state to pay extra compensation in the absence of a clear legal obligation. The Board of Claims has properly disposed of this item, and the judgment in this respect should be affirmed.

Items 16, 44, and 45 appear to have been properly disposed of by the Board of Claims, and it does not appear profitable to add anything to the discussion of the learned chairman of the board to be found at pages 294–296 of the record.

[9, 10] We find no reason for holding the state liable for any alleged increased cost by reason of the fact that the contractors were not permitted to use a Hains mixer. It certainly is not clear from the evidence that the work as done was any more expensive than it would have been if done with the Hains mixer. There was a conflict of evidence upon the point, but the claimants had the burden of showing that they had suffered by reason of the alleged arbitrary action of the state, and the evidence is lacking in that preponderance which should exist in order to burden the state with a charge which has resulted in no material benefit. All of these contingencies are presumptively included in the contract price; it must be presumed that experienced contractors upon public works know that they will meet with more or less arbitrary

rulings upon questions of detail; and they must protect themselves by their contracts rather than through claims, supported by doubtful evidence, after the work is completed.

We are clearly of the opinion that item No. 50, for $32,192, based upon a change in the location of a spoil bank, is not well·founded. The preponderance of credible evidence is to the effect that this change was made at the request and for the benefit of the contractors and with the understanding that it was not to add to the cost of the work, and the state cannot be properly charged under such circumstances.

[11] The case of Kinser Construction Co. v. State, 204 N. Y. 381, 97 N. E. 871, is sufficient authority for the disallowance of item 51, for profits lost by reason of the nonconstruction of a guard gate, and the question of interest upon the certified check deposited on making the bid was a matter outside of the contract and has no place here.

The determination appealed from should be reversed in so far as it relates to items 46, 47, and 48, and in all other respects affirmed, with costs to the state.

The findings of fact of which the court disapproves are Nos. 269 to 289, both inclusive. In lieu thereof the court determines that the work referred to was not extra work, but was fairly embraced within the terms of said contract and covered by it, and the claimants are not entitled to extra compensation therefor. All concur.