JASPER A. CAMPBELL, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

SAME, Appellant, *v.* SAME, Respondents.

FRANK H. MORSE, Appellant, *v.* JOHN H. DELANEY et al., Constituting the Board of Transportation of the City of New York, et al., Respondents.

Constitutional law — Labor Law — New York city — taxpayer's action — provision of Labor Law for payment of prevailing rate of wages on public works not unconstitutional because unintelligible — complaints in taxpayer's actions to restrain awarding of contracts for public work on ground they contain labor provisions in accordance with statute properly dismissed — added definitions do not constitute cause of action where it does not appear that their insertion in contracts will cause loss to municipality — expediency of insertion of provision for arbitration determined by officers to whom regulation of form of contracts is confided.

1. Section 220 of the Labor Law (Cons. Laws, ch. 31) is not unconstitutional in so far as it requires the insertion in every State or municipal contract for public works of a provision for an eight-hour day for labor and payment of wages "not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the State where such public work" is performed. There is no constitutional immunity against contractual obligations that are ambiguous or doubtful. The contractor takes the contract as the State tenders it, or leaves it altogether. (*Connally* v. *General Construction Co.*, 269 U. S. 385, distinguished.)

2. Complaints, therefore, are properly dismissed in taxpayers' actions, brought under section 51 of the General Municipal Law

(Cons. Laws, ch. 24), to restrain the city of New York, its board of estimate and apportionment and the board of transportation from perfecting or awarding proposed contracts for construction of sections of a subway, on the ground that they contain provisions, as required by section 220 of the Labor Law, regulating the wages to be paid by contractors, subcontractors and others, and that the requirements of such provisions are uncertain, indefinite and unintelligible. Plaintiffs to maintain their action must show an illegal act or waste of public money (General Municipal Law, § 51) and there can be no illegal act nor waste of public moneys in the mere adherence to the commands of a constitutional enactment.

3. Nor may the actions be maintained on the ground that the proposed contracts contain " added definitions " the effect of which are to supplement the statutory requirements by setting bounds to the " locality " and by stating rules for the ascertainment of the " prevailing rate " of wages, where nothing in the complaints supplies a basis for a holding that loss otherwise to be averted will ensue to the municipality as the result of the " added definitions," but their whole theory is, that without reference thereto, the statutory form of promise is so unworkable and meaningless as to destroy the possibility of intelligent competition by bidders for the job.

4. The contract is not illegal in providing for the arbitration of any controversy thereunder. The expediency of such a settlement of differences is to be determined by the public officers to whom the regulation of the form of contracts is confided by the statute.

*Campbell* v. *City of New York* (2 cases), 218 App. Div. 826, affirmed.
*Morse* v. *Delaney*, 218 App. Div. 826, affirmed.

(Argued January 12, 1927; decided February 23, 1927.)

APPEAL, in each of the above-entitled actions, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 15, 1926, affirming a judgment in favor of defendants entered upon an order of Special Term granting a motion for a dismissal of the complaint.

*Isidor J. Kresel* for Jasper A. Campbell, appellant. The " prevailing rate of wage " provisions of section 220 of the Labor Law, particularly as applied to the subway construction work to be performed under the proposed

contracts, are unconstitutional and void because in conflict with the due process clauses of the State and Federal Constitutions. (*People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *Connally* v. *General Construction Co.,* 269 U. S. 385; *People* v. *Briggs,* 193 N. Y. 457; *Matter of Di Torio,* 8 Fed. Rep. [2d] 279, 281; *People ex rel. Title Guarantee & Trust Co.* v. *McQuade,* 118 Misc. Rep. 785; *People ex rel. Williams Engineering & Contracting Co.* v. *Metz,* 193 N. Y. 148; *Wright* v. *State of New York,* 223 N. Y. 44; *McGovern* v. *City of New York,* 234 N. Y. 377; *McNulty* v. *City of New York,* 238 N. Y. 29; *Schwartz* v. *Board of Education of the City of New York,* 239 N. Y. 566.) The " prevailing rate of wage " provisions contained in the proposed contracts are wholly inconsistent with each other, are in conflict with paragraph 3 of section 220 of the Labor Law and with other statutory provisions and are altogether unworkable. (*Matter of Fletcher,* 237 N. Y. 440.) The actions are properly brought by the plaintiff as a taxpayer under section 51 of the General Municipal Law to prevent waste and injury to the property, funds or estate of the city of New York. (*Altschul* v. *Ludwig,* 216 N. Y. 459; *Fraser* v. *City of Buffalo,* 125 Misc. Rep. 83; 215 App. Div. 861; 243 N. Y. 554; *Gage* v. *City of New York,* 110 App. Div. 403; *Grace* v. *Forbes,* 64 Misc. Rep. 130; *Kuhn* v. *City of Buffalo,* 84 Misc. Rep. 157; *Hart* v. *City of New York,* 201 N. Y. 45; *Meyers* v. *City of New York,* 58 App. Div. 543; *Meyers* v. *Pennsylvania Steel Co.,* 77 App. Div. 307; *Knowles* v. *City of New York,* 176 N. Y. 430.)

*John F. Collins, Franklin Nevins, Harry S. Bandler* and *Alfred C. Petté* for Frank H. Morse, appellant. Section 220 of the Labor Law (Consol. Laws, art. VIII, chap. 31), in so far as it provides for the payment of the " prevailing rate of wages " in the " locality within the State " where the work is to be performed, is in violation

of article I, section 6, of the Constitution of the State of New York and of the Fourteenth Amendment to the Federal Constitution, and the provisions of article LXVII requiring compliance therewith are unauthorized and illegal. (*Connally* v. *General Construction Co.*, 269 U. S. 385; *Village of Medina* v. *Dingledine*, 211 N. Y. 24; *McGovern* v. *City*, 234 N. Y. 377; *People* v. *Crane*, 214 N. Y. 154; *Lees* v. *U. S.*, 150 U. S. 476; *Standard C. & M. Corp.* v. *Waugh C. Corp.*, 231 N. Y. 51; *Small Co.* v. *American Sugar Refining Co.*, 267 U. S. 233.) Assuming that the prevailing rate provisions of section 220 of the Labor Law are constitutional, the " added provisions " in article LXVII of the proposed contracts are in conflict with the statute and inconsistent with it and their insertion is unauthorized and illegal. (*Schumer* v. *Caplin*, 241 N. Y. 346; *People ex rel. Rolf* v. *Coler*, 58 App. Div. 347; *Haggart* v. *Morgan*, 5 N. Y. 422; *President D. & H. C. Co.* v. *Penn. Coal Co.*, 50 N. Y. 250; *Seward* v. *City of Rochester*, 109 N. Y. 164; *National Cont. Co.* v. *Hudson River W. P. Co.*, 170 N. Y. 439; 192 N. Y. 209; *Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 N. Y. 346.) There is no power in the board of transportation to insert the " added provisions " in the contracts. (*Meyers* v. *City of New York*, 58 App. Div. 534.) The plaintiff as a taxpayer, because of the illegal official acts of including in proposed contracts the provisions complained of, has stated a cause of action and is entitled to the relief demanded. (*Peck* v. *Belknap*, 130 N. Y. 394; *Altschul* v. *Ludwig*, 216 N. Y. 459; *Western N.Y. Water Co.* v. *Buffalo*, 242 N. Y. 202; *Fraser* v. *City of Buffalo*, 125 Misc. Rep. 83; *Shewan* v. *Mills*, 211 App. Div. 687; *Meyers* v. *City of New York*, 58 App. Div. 534; *Gage* v. *City of New York*, 110 App. Div. 403; *Hart* v. *City*, 201 N. Y. 45; *Rodgers* v. *Common Council of Buffalo*, 123 N. Y. 173; *Rathbone* v. *Wirth*, 150 N. Y. 459; *Sun Pub. Co.* v. *Mayor*, 8 App. Div. 230; 152 N. Y. 257; *Cahill* v. *Hogan*, 180 N. Y. 304; *Wilcox* v.

*McClellan*, 110 App. Div. 378; 185 N. Y. 9; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Admiral Realty Co.* v. *Gaynor*, 147 App. Div. 719; *Hopper* v. *Wilcox*, 155 App. Div. 213.)

*William G. Fullen, Ralph H. Monroe, George E. Coughlin* and *John F. X. McGohey* for Board of Transportation of City of New York et al., respondents. This court is without jurisdiction to hear or determine the constitutionality of the Labor Law in a taxpayer's action. (*Schieffelin* v. *Komfort*, 212 N. Y. 520; *Marbury* v. *Madison*, 1 Cranch, 137; *Matter of Sawyer*, 124 U. S. 200; *Green* v. *Mills*, 69 Fed. Rep. 852; *Muskrat* v. *U. S.*, 219 U. S. 346; *Doolittle* v. *Supervisors of Broome County*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 N. Y. 318; *Milhau* v. *Sharp*, 27 N. Y. 611; *People* v. *Halsey*, 37 N. Y. 344; *State* v. *Ingersoll*, 58 N. Y. 1; *People* v. *Fields*, 58 N. Y. 491; *Demarest* v. *Wickham*, 63 N. Y. 320; *Osterhaudt* v. *Rigney*, 98 N. Y. 222; *Flynn* v. *Taylor*, 127 N. Y. 596; *Wakeman* v. *Wilbur*, 147 N. Y. 657.) The Labor Law in so far as it applies to these proceedings is constitutional. (*Sickles* v. *Sharp*, 13 Johns. 497; *Hathaway* v. *Johnson*, 55 N. Y. 93; *Novotny* v. *Kosloff*, 214 N. Y. 12; *People ex rel. Williams Engineering Contracting Co.* v. *Metz*, 194 N. Y. 145; *People ex rel. Price* v. *Sheffield Farms Co.*, 225 N. Y. 25; *People* v. *Crane*, 214 N. Y. 154; *Ryan* v. *City of New York*, 177 N. Y. 271; *People* v. *Orange County Road Const. Co.*, 175 N. Y. 84; *People ex rel. Cossey* v. *Grout*, 179 N. Y. 417; *People ex rel. W. E. & C. Co.* v. *Metz*, 193 N. Y. 148; *Wright* v. *State of New York*, 223 N. Y. 44.)

*George P. Nicholson, Corporation Counsel* (*Arthur J. W. Hilly, Joseph L. Pascal* and *J. Joseph Lilly* of counsel), for City of New York et al., respondents. The court may not interfere with the exercise of discretionary

21

# 322 CAMPBELL v. CITY OF NEW YORK.

powers vested by law in the board of transportation and the board of estimate and apportionment. (*McCabe* v. *City of New York*, 213 N. Y. 468; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Knowles* v. *City of New York*, 176 N. Y. 430; *Ryan* v. *City of New York*, 177 N. Y. 271.) The provisions of the proposed contracts objected to by the plaintiff herein are not illegal. (*Coulter* v. *Board of Education*, 63 N. Y. 365; *Matter of N. Y., L. & W. R. R. Co.*, 98 N. Y. 445.)

CARDOZO, Ch. J.   These are taxpayers' actions under General Municipal Law, § 51 (Consol. Laws, ch. 24) to restrain the city of New York, its board of estimate and apportionment, and the board of transportation, from perfecting or awarding proposed contracts for the construction of sections of a subway. The wages to be paid by contractors, subcontractors or others to laborers, workmen or mechanics engaged upon the work are regulated in the contracts by provisions which are assailed as wasteful and illegal. The question is whether the complaints state the essentials of a cause of action.

By the Labor Law of the State (Consol. Laws, ch. 31, § 220) every contract to which the State or a municipal corporation or a commission appointed pursuant to law is a party and which may involve the employment of laborers, workmen or mechanics shall contain a provision for an eight-hour day of labor except in cases of extraordinary emergency.

By the same section, " The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, or upon any material to be used upon or in connection therewith, shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the State where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used

and shall be paid in cash. Such contracts shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided."

Violation of any provision of the section is a crime, punishable by fine or imprisonment, or both, and in addition forfeiting the contract illegally performed, and, in case of a second offense, the payments earned thereunder (§ 220, subd. 5).

Following the requirements of this section, the proposed contracts provide " that the wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics upon the work contemplated by this contract or upon any material to be used upon or in connection therewith, shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the State where the work hereby contemplated about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used, and shall be paid in cash; and that each such laborer, workman or mechanic employed by the contractor or by any sub-contractor or other person on, about or upon the work contemplated by this contract, shall receive such wages herein provided for."

The framers of the contracts did not confine themselves, however, to the foregoing provisions which are substantially a repetition of the language of the statute. They added other provisions with a view to greater certainty. " Locality within the State " was to be understood as signifying the city of New York. " The prevailing rate " of wage was to be the " rate paid to a majority of the laborers, workmen or mechanics engaged in the same trade or occupation in the City of New York." If there was not a majority paid at the same rate, " then the rate paid to the greater number of such trade or

occupation in the City of New York " was to be accepted as the prevailing rate, " provided that such greater number constitute at least 40 per centum of the laborers, workmen or mechanics engaged in such trade or occupation in the City of New York." If less than 40 per centum were. paid at the same rate, then the prevailing rate was to be the average rate paid to such laborers, workmen or mechanics in the same trade or occupation. Those employed under the proposed contracts were to be included with others in reckoning the total number.

The complaints allege in substance that the " prevailing rate " of wages under Labor Law (§ 220) is a variable quantity, uncertain, indefinite, and not susceptible of ascertainment; that the statute, in so far as it prescribes the payment of such wages, is unconstitutional, for the reason that its command is unintelligible; that the contracts made thereunder, in so far as they repeat the same command, are invalid for the same reason and to the same extent; that the added definitions illegally depart from the form established by the statute, and, even if otherwise permissible, do not correct the uncertainty; and finally that bidders for the proposed contracts will be unable to bid with understanding, and will be driven to increase their bids as a protection against obligations unknown and unknowable, with resulting waste and injury to the city and its taxpayers.

The public policy of the State declared by successive Legislatures during a period of thirty years (L. 1897, ch. 415; L. 1899, ch. 567; L. 1900, ch. 298; L. 1906, ch. 506; L. 1909, ch. 292; L. 1913, ch. 494; L. 1916, ch. 152; L. 1921, ch. 642) exacts the payment of the rate of wages pre-vailing in the vicinage to laborers and mechanics employed upon the public works. We trace in judicial decision and constitutional amendment the tides of thought and sentiment. *People ex rel. Rodgers* v. *Coler* (1901, 166 N. Y. 1) held an early statute void. A majority of the court discerned an invasion of the constitutional rights

of the municipality itself.  The same majority discerned
an invasion of the liberty of the contractors and a denial
of due process of law when the privilege of hiring labor
on any terms obtainable was obstructed or withdrawn.
*Atkin* v. *Kansas* (1903, 191 U. S. 207) undermined this
last position so effectually that there has been little
attempt since then to occupy the weakened ground.
A sentence states the argument.  " It cannot be deemed
a part of the liberty of any contractor that *he* be allowed
to do public work in any mode he may choose to adopt,
without regard to the wishes of the State " (191 U. S. at
p. 222).  Following that decision came limitation and
distinctions.  *Ryan* v. *City of New York* (1904, 177 N. Y.
271) drew a dividing line between the regulation of wages
to be paid to the servants of contractors and the regu-
lation of wages to be paid to servants of municipality or
State.  *People ex rel. Cossey* v. *Grout* (1904, 179 N. Y. 417.
423) gave over the objection that the contractors had
suffered in their liberty.  " No man has a right    *    *    *
to a contract for work except on just such terms and
conditions as the other contracting party prescribes "
(179 N. Y. at p. 428).  Nothing was then left except
some immunity supposed to be inherent in the munici-
pality itself.  Whatever vestige there was of this dis-
appeared with the constitutional amendment of 1905.
" The legislature may regulate and fix the wages or
salaries, the hours of work or labor, and make provision
for the protection, welfare and safety of persons employed
by the State or by any county, city, town, village or
other civil division of the State, or by any contractor or
subcontractor performing work, labor or services for the
State, or for any county, city, town, village or other civil
division thereof " (Constitution, art. XII, § 1; *People ex
rel. Williams Eng. & Cont. Co.* v. *Metz*, 1908, 193 N. Y. 148).

The plaintiffs would have us hold that from the throes
of this long struggle there emerged a statute without
meaning, a futile and deceptive gesture.  *Connally* v.

*General Construction Co.* (269 U. S. 385), decided by the Supreme Court of the United States in January, 1926, is said to point to that conclusion. An injunction was there sought to restrain the law officers of Oklahoma from the enforcement of a penal statute. The wages paid by the employer were $3.20 per day. The commissioner of labor complained that $3.60 should be accepted as the " current rate." His own investigation showed, however, that wages varied in the locality from $3 at one extreme to $4.05 at the other. These were conceded facts, for the case was heard upon demurrer to the bill. In such circumstances, the decision was merely this, that in its application to that employer, the statute, which is very similar to our own, was too obscure and indefinite to sustain a charge of crime. Obscurity was thought to be inherent in the standard of " a current wage," with a multitude of gradations between minimum and maximum. Obscurity was thought to be inherent also in the " locality " of the work. There was thus, in the view of the court, " a double uncertainty," fatal to the validity of " a criminal statute." " Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another." (quoting *U. S.* v. *Capital Traction Co.*, 34 App. D. C. 592; cf. *U. S.* v. *Cohen Grocery Co.*, 255 U. S. 81).

We are met in the case at hand by a problem of a different order. There is no question before us now of punishment for crime. There is merely a question of the regulation of a form of contract. The Legislature has said that contractors working for the State or for its civil subdivisions shall bind themselves by a promise which is criticised as indefinite and meaningless. Plainly the Constitution of the United States has nothing to say about regulations of that kind. The Fourteenth Amend-

ment does not embody a provision that municipal con-
tracts shall be perspicuous and definite. If a promise is
meaningless, the promisor may not be punished for the
omission to observe it. By the very terms of the
hypothesis, the fact of the omission is incapable of proof.
For the same reason, he may not be charged in such
circumstances with civil liability. " A prohibition so
indefinite as to be unintelligible is not a prohibition
by which conduct can be governed. It is not a rule
at all; it is merely exhortation and entreaty" (*Standard
Chemical Corp.* v. *Waugh Chemical Corp.*, 231 N. Y. 51, 54;
*Small Co.* v. *Am. Sugar Ref. Co.*, 267 U. S. 233, 240). This
is very far from saying that every indefinite provision in
a contract between city and contractor, if placed in the
instrument under the direction of a statute, is an invasion
by the State of a constitutional immunity. The presence
of the promise does not add anything to the risk of
criminal prosecution. The crime, if any, would consist,
not in violation of the promise, however certain its
obligation, but in violation of the statute. Civil remedies
and no others can be affected through the reinforcement
of the statute by the obligation of a contract. The
Legislature must determine whether the promise has
value or significance sufficient to justify an insistence
that it be embodied in the instrument. If it is mere
balderdash or jargon, the contractor will be in the same
position as if no promise had been made. If it is uncertain
or indefinite, and yet susceptible of construction, it will
carry with it an obligation that will be at least civilly
enforcible. The contractor takes the contract as the
State tenders it, or leaves it altogether. He is not
injured in his constitutional rights by being put to the
election (*People ex rel. Cossey* v. *Grout, supra*, at p. 428;
*Atkin* v. *Kansas, supra*). He may think the risk too
great. He will then decline to enter into relations with
a municipality so exacting. He may survey the risk
and take it. He will then be bound by the promise

according to its meaning, if meaning it is found to have. For more than twenty years every contractor with State or municipality has been put to the same choice. It is novel doctrine that there is a constitutional immunity against contractual obligations that are ambiguous or doubtful.

If the Constitution does not make it illegal to place this promise in the contract, the plaintiffs may not be heard to insist that the promise shall come out. Their right of action as taxpayers is measured by the statute (General Municipal Law, § 51). They must show an illegal act or waste of public property. Here the act to be restrained is one commanded by the statute. The public officers before us are directed by the statute to insert in the contract the very provision that the plaintiffs are seeking to remove. There can be no illegal act nor waste of public moneys in the mere adherence to the commands of a constitutional enactment (cf. *Meyers* v. *City of N. Y.*, 32 Misc. Rep. 522; affd., on op. below, 54 App. Div. 631; *Talcott* v. *City of Buffalo*, 125 N. Y. 280). Another form of contract might be more expedient or cheaper. The courts do not sit in judgment upon questions of legislative policy or administrative discretion. The taxpayer must point to illegality or fraud (*Smith* v. *Hedges*, 223 N. Y. 176).

The form of contract being lawful to the extent that it repeats the provisions of the statute, there is no occasion to determine the remedies, criminal or civil, that will be available to the municipality if the claim shall be made hereafter that those provisions have been violated. Questions of that order, suggested in the briefs of counsel, are mentioned only to reserve them. We do not now determine whether *Connally* v. *General Construction Co.* (*supra*) stands in the way of criminal prosecution. Distinctions of place and circumstance may conceivably exist. If so, the time to draw them is not now. We put aside for the same reason the determination of the bounds

of civil liability.   Criteria of conduct, too indefinite and elastic to expose to punishment for crime, may yet be fixed and definite in such degree that they are not to be disregarded as wholly unintelligible when the question is one of the violation of a promise.   This is not the time to attempt a definition of " the prevailing rate of wages " with its background of legislative history and twenty years or more of practical construction.   One finds it hard to believe that a cliché so inveterate is devoid of meaning altogether.   Learned judges have said (*e. g.*, HAIGHT, J., in *People ex rel. Rodgers* v. *Coler, supra,* at p. 42) that it is synonymous with market rate.   This might not exclude altogether the possibility of fluctuations and diversities at a given day and place.   There can be little doubt that it would furnish us with criteria of conduct adequate for civil, if not for criminal, liability (*Sloan* v. *Baird,* 162 N. Y. 327, 330; *Muser* v. *Magone,* 155 U. S. 240, 249; Wigmore, Evidence, § 719; cf. *Nash* v. *U. S.,* 229 U. S. 373, 377).   Other judges have believed that the range of variation is wider and less certain than any that is consistent with the standards of a market value.   Even so, a customary minimum might co-exist with a customary maximum, however varying the number of intermediate gradations.   A standard so indefinite, if effective for nothing else, would prevent the fall of wages below the customary minimum.   A level would be established below which the rate could not descend and still be characterized as " prevailing."   The Legislature may have thought that the statutory promise would not be wholly without value if it availed for this and nothing more.   There would be no merciless exploitation of the indigent or idle.

A word must be said of the so-called " added definitions."   The effect of these definitions is to supplement the statutory promise by setting bounds to the " locality " and by stating rules for the ascertainment of the rate of wage prevailing at any time or place.   The

statutory promise is either workable or unworkable, with meaning or without. If unworkable and meaningless, point and power may be given it by gloss and explanation. (cf. Public Service Comm. Law, § 134; Rapid Transit Act, § 26). If intelligible and workable, there may still be amplifying provisions when amplification is consistent with the statutory scheme. The plaintiffs take the ground that in framing the definitions, the defendants have made an illegitimate departure from the meaning of a statute which was already without meaning. If a feat so extraordinary were taken to be possible, it would not serve to establish an actionable wrong. We do not go into the question whether statute and definitions can stand together at every point. The plaintiffs would not be helped though inconsistency were found. Their cause of action as taxpayers requires something more than proof of an illegal act. The illegality must tend to the detriment of the city either by the dissipation of its funds or by the threat of other injury so imminent and substantial as to make it proper that the taxpayers be protected by injunction (*Western N. Y. Water Co.* v. *City of Buffalo*, 242 N. Y. 202; *Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100). Nothing in the complaint supplies a basis for a holding that loss otherwise to be averted will ensue to the municipality as the result of the added definitions, whether they be lawful or unlawful. The theory of the whole complaint is that without reference to the definitions, the statutory form of promise is so unworkable and meaningless as to destroy the possibility of intelligent competition by bidders for the job. The plaintiffs do not say that bidding would become intelligent or competition be established if the definitions were omitted. They tell us, on the contrary, that bidding would be confused in any event, and competition stifled, by the very form of contract made mandatory by law. The menace to the taxpayers by force of anything that has been added is illusory and fanciful.

We see no force in the contention that the contract is illegal in providing for the arbitration of any controversy thereunder (*Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261). The expediency of such a settlement of differences is to be determined by the public officers to whom the regulation of the form of contracts is confided by the statute.

We have considered other questions and find them unsubstantial.

The judgment in each action should be affirmed with costs.

Pound, Crane, Andrews and Lehman, JJ., concur; Kellogg, J., absent.

Judgments affirmed.