298

Thomas E. Devitt and Twenty-nine Others, Respondents, *v.* Fred C. Schottin, Jr., Doing Business under the Assumed Name of National Painting Company, and State of New York, Defendants, Impleaded with The Haglin Company, Inc., and Winston Brothers Co., Inc., Appellants.*

Fourth Department, June 30, 1936.

*Horace C. Winch*, for the appellants.

*Julius A. Schreiber*, for the respondents.

*Affg. 158 Misc. 230.

*John J. Bennett, Jr., Attorney-General* [*Vincent Kiebala, Assistant Attorney-General,* of counsel; *Henry Epstein, Solicitor General,* with him on the brief], for the defendant State of New York.

EDGCOMB, J. On January 28, 1933, the defendants Haglin Company, Inc., and Winston Brothers Co., Inc., entered into a contract with the State of New York for the erection of an addition to the Gowanda State Hospital at Helmuth, N. Y. The painting was sublet by the general contractors to the defendant Fred C. Schottin, Jr. Plaintiffs were employed by Schottin as painters and wood finishers at an agreed price per hour. Schottin defaulted on his contract February 2, 1935, at which time he was owing the plaintiffs for wages a sum aggregating $1,702.40. The State Comptroller has been directed by the judgment appealed from to pay the plaintiffs out of the sum of $2,000, retained by that official from the final payment due the general contractor, the amounts due and owing each of said plaintiffs from the subcontractor, together with interest thereon. Plaintiffs claim to be entitled to this relief by reason of the provisions of sections 220-a and 220-b of the Labor Law.

These two sections, so far as they pertain to the facts before us, read as follows:

" § 220-a. Statements showing amounts due for wages to be filed — Verification. Before payment is made by or on behalf of the State * * * of any sum or sums due on account of a contract for a public improvement it shall be the duty of the Comptroller of the State * * * to require the contractor and each and every subcontractor from the contractor of [so in the original] a subcontractor to file a statement in writing * * * certifying to the amounts then due and owing from such contractor or subcontractor filing such statement to any and all laborers for daily or weekly wages on account of labor performed upon the work under the contract, setting forth therein the names of the persons whose wages are unpaid and the amount due to each respectively, which statement so to be filed shall be verified by the oath of the contractor or subcontractor as the case may be that he has read such statement subscribed by him and knows the contents thereof, and that the same is true of his own knowledge."

" § 220-b. Amounts due for wages may be withheld for benefit of laborers. In case any interested person shall have previously filed a protest in writing objecting to the payment to any contractor or subcontractor to the extent of the amount or amounts due or to become due to him for daily or weekly wages for labor performed on the public improvement for which such contract was entered into, or if for any other reason it may be deemed advis-

able, the Comptroller of the State or the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the State or corporate funds applicable to the contract for such public improvement may deduct from the whole amount of any payment on account thereof the sum or sums admitted by any contractor or subcontractor in such statement or statements so filed to be due and owing by him on account of labor performed on such public improvement before making payment of the amount certified for payment in any estimate or voucher, and may withhold the amount so deducted for the benefit of the laborers for daily or weekly wages whose wages are unpaid as shown by the verified statements filed by any contractor or subcontractor, and may pay directly to any person the amount or amounts shown to be due to him for such wages by the statements filed as hereinbefore required, thereby discharging the obligation of the contractor or subcontractor to the person receiving such payment to the extent of the amount thereof."

In an attempted compliance with the provisions of section 220-a of the Labor Law, Schottin, the subcontractor, filed with the Comptroller a verified statement of the amounts due the plaintiffs for wages on account of labor performed by them upon the work under contract, and later the plaintiffs filed wage claims or protests, as provided in section 220-b of the same act. The Comptroller withheld from the general contractors' progress payments the sum of $2,000 to take care of such claims.

By section 220-a the Legislature made it possible for the State to ascertain the amount of all wages unpaid to workmen on public works. But that information is of little value if it has no useful purpose. Section 220-b reveals the object to be attained.

This latter section is not mandatory; it is permissive only. It authorizes the Comptroller to deduct from the amount due to a contractor or subcontractor " the sum or sums admitted by any contractor or subcontractor " in the statement filed by him " to be due and owing by him on account of labor performed on such public improvement."

Appellants insist that this provision should be construed to mean that the Comptroller can only retain out of the moneys due a contractor or subcontractor the sum which that particular contractor or subcontractor, whichever it happens to be, admits is owing from him to his own employees. Appellants say that, inasmuch as they have made no admission as to the amount due their own employees or those of Schottin, no deduction can be made from the moneys due them from the State.

Respondents claim that the statute is broad enough to apply to all laborers, whether they are employees of the general contractor or of his subcontractor.

We are called upon to determine to what extent section 220-b applies when the laborers of a subcontractor are unpaid, and the admission of the indebtedness is made by the subcontractor only.

The underlying and chief consideration of the courts in construing a statute is to ascertain and give effect to the legislative intent. The wisdom or expediency of the act is no concern of ours. The purpose of the Legislature must be determined primarily from the language used in the statute, read, of course, in connection with the surrounding circumstances, and the rules of interpretation.

The sections in question were added to the Labor Law by chapter 472 of the Laws of 1932, and were undoubtedly intended to protect the interests of laborers engaged upon public work of the State and its subdivisions. The policy of the State, as indicated by judicial decisions and constitutional amendments over a period of years, is to exact the prevailing rate of wages to all laborers on public work, and to make sure, so far as possible, that they will be paid for their labor. (*Campbell* v. *City of New York*, 244 N. Y. 317, 324.) In construing these sections, we must bear in mind this growing tendency on the part of the State.

If we are to give the provisions the interpretation contended for by the appellants, it is difficult to understand what possible object there could be in requiring a subcontractor to file a statement of his indebtedness to his employees. The general contractor would know little or nothing concerning the relations which existed between his subcontractor and the latter's employees, and he would seldom, if ever, make any admission in relation thereto. The State deals directly with the general contractor, and does not know the subcontractor. Payments on the contract are not made to the latter, but to the general contractor. If appellants' contention is correct, I can see no possible effect to be given to any of the provisions of the statute relating to subcontractors; they are meaningless. All words in a statute are deemed to have been used solemnly and deliberately and for some useful purpose. There is no reason why, if the Legislature intended to adopt a general policy of securing the pay of all laborers on a public job, they should single out those who happened to work for the general contractor and overlook those employed by a subcontractor. The employees of one are just as much workmen on a public improvement as those of the other, and one is just as much entitled to be paid for his labor as the other. The general object and purpose underlyng the enactment of a statute are potent considerations in determining its meaning.

From a reading of the sections, and from the growing tendency of the Legislature to protect laborers on public jobs, and from all the surrounding facts and circumstances, it is apparent that the Legislature intended to assure to all laborers on public work the payment of their wages, no matter whether they were employees of the person with whom the State was doing business directly, or of some subcontractor who was unknown to the State.

Appellants urge with much force that, if this construction is given the statute, it deprives them of their property without due process of law in contravention of section 1 of the Fourteenth Amendment to the Federal Constitution, and article 1, section 6, of the State Constitution.

In deciding this question we may eliminate the effect of these constitutional restrictions on contracts between individuals. We are here dealing with an agreement between individual corporations and the State, and the law is well settled that one who undertakes to perform public work for the State must take the contract as the State tenders it, or leave it altogether. (*Campbell* v. *City of New York*, 244 N. Y. 317.)

The constitutional liberty of the appellants has not been infringed because they have no vested right to deal with the State except on such terms as the Legislature may prescribe. (*People ex rel. Cossey* v. *Grout*, 179 N. Y. 417, 423; *Atkin* v. *Kansas*, 191 U. S. 207.)

In the agreement between the appellants and the State it is stipulated that the proposal, general conditions, drawings and specifications constitute a part of the instrument, and have the same force and effect as if specifically set forth therein. A like provision is found in the general conditions furnished all bidders on the work.

Paragraph 27 of the General Conditions contains this clause: " The contractor shall be held responsible for the prompt, faithful and efficient prosecution of the work and must keep full control of all subcontractors and be responsible for them."

Appellants were not obliged to enter into this contract; they did so of their own free will. The State having determined that the provisions of the two sections in question should be a condition upon which this public work should be done, and appellants having accepted such conditions, the appellants cannot now complain that their constitutional liberty has been infringed.

Besides the people of the State have expressly given the Legislature power to " regulate and fix the wages or salaries, the hours of work or labor, and make provision for the protection, welfare and safety of persons employed by the State or by any county,

city, town, village or other civil division of the State, or by any contractor or subcontractor performing work, labor or services for the State, or for any county, city, town, village or other civil division thereof." (State Const. art. 12, § 1.)

It may well be said that sections 220-a and 220-b come within the purpose of this provision of the State Constitution.

For these reasons we think that the judgment appealed from should be affirmed, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Judgment affirmed, with costs.