CARDER REALTY CORPORATION, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23994.)

Court of Claims, November 13, 1939.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Assistant Attorney-General,* of counsel], for the defendant.

MURPHY, J.   December 17, 1931, the claimant entered into a contract with the State of New York, Department of Mental Hygiene, for the construction work of seven buildings and service tunnels at the Hudson River State Hospital, Poughkeepsie, N. Y. The work of the contract was to be performed in the order directed, and under the supervision of the chief engineer, in accordance with the drawings and specifications prepared by the Commissioner of Architecture.   The proposal, the general conditions and specifications were made a part of the contract and the contractor agreed to conduct the work provided for in compliance with all the laws of the State of New York.   With definite exceptions, the contractor further agreed that no laborer, workman or mechanic in its employ or in the employ of a subcontractor or other person doing or contracting to do the whole or part of the work should be permitted or required to work more than eight hours in any one calendar day, and that the wages to be paid for a legal day's work as defined in the Labor Law to all classes of laborers, workmen or mechanics upon such work should not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the State where such work was being performed.

The contract is such as is called a lump sum contract. The price fixed for the work was $1,047,700; payments were to be made monthly provided the work was progressed diligently and to the satisfaction of the Department of Public Works. The payments were to be made in accordance with the terms specified in article 36 of the general conditions. They were to be made on the application of the contractor and the payments requested were to be supported by such vouchers or receipts as might be required by the chief engineer to substantiate the payments requested. Article 36 of the general conditions, referred to, is extracted from the Labor Law; it provides for the hours and wages of laborers; it makes violations of the provisions of the law a misdemeanor; it states the penalties for such violations, among which is the forfeiture of the contract following a second violation. By statutory command these stipulations and provisions relative to hours of labor and prevailing rate of wages are incorporated in the contract.

So far as the record discloses, the work of the contract proceeded without unpleasant incident until March, 1933; successive monthly payments were made, fourteen in number, the last being paid March 4, 1933, and, this payment included, the payments aggregated $816,584.83.

March 29, 1933, the claimant contractor, in accordance with the contract provisions, made application for a further payment. The application for this payment was approved by the State Department of Public Works under date of April 17, 1933. But prior to this payment being approved, and on April 10, 1933, the State Comptroller wrote the claimant informing it of a letter of advice received by that officer from the Attorney-General, stating that in view of such advice there would be withheld from the payment an amount sufficient to cover certain labor claims referred to in the Attorney-General's letter. In the same letter the State Comptroller requested the claimant to "forward an affidavit executed under the provisions of Section 220-b of the Labor Law certifying the maximum amount that may become due these laborers," meaning those laborers on whose account payment would be withheld.

Through its counsel, the claimant, on April 13, 1933, made reply to this letter. It took the position that the provisions of sections 220-a and 220-b of the Labor Law did not apply or affect the claimant's contract; it protested the right of the State to withhold any of the moneys due the contractor for the reason set forth in the part of the letter of the Attorney-General quoted in the letter of the State Comptroller to the claimant, the letter of April 10, 1933, and it gave notice that failure to make the payment requested would be determined by it as a breach of contract on the part of the State.

By a letter of April 20, 1933, the claimant by its counsel wrote to the State Comptroller and again protested the State's right to withhold payment; it demanded immediate payment to its assignee, The Carleton Realty Co., Inc., and restated that if payment were not immediately made it would conclude that the State had breached the contract, and it added that it would not proceed further with the work.

On the same day Carleton Realty Co., Inc., as assignee, by its counsel, made demand in writing upon the State for the immediate payment to it of the sum of $28,400, claiming the said sum under its assignment. Subsequent to April 20, 1933, the State receded from its position, and on April 25, 1933, it paid Estimate No. 15, amounting to $32,700, by paying therefrom to the Carleton Realty Co., Inc., the sum of $28,400 and retaining under the provisions of a court order the sum of $4,300. With this estimate, which was No. 15, paid, the total payments received by the claimant or made upon its account amounted to $849,284.83.

During the above-narrated controversy the claimant continued in the performance of the work of its contract, and on April 25, 1933, made requisition upon the State for further payment, and on May 4, 1933, the Department of Public Works approved the requisition to the amount of $24,650. On the day following, May 5, 1933, the State Comptroller by letter informed the claimant of an opinion rendered by the Attorney-General relative to chapter 472 of the Laws of 1932, sections 220-a and 220-b of the Labor Law, quoting from the opinion the following: " It is, therefore, my opinion that you should require all contractors or subcontractors engaged in public improvements under existing contracts to file the statement of unpaid wages as provided for in Section 220-a of the Labor Law both as to contracts entered into prior to and after July 1st, 1932."

The letter then continued with a request that claimant furnish certificate regarding unpaid wages and informed claimant that the Estimate No. 16 would not be advanced for payment until the necessary affidavit might be received.

On May 6, 1933, a similar letter was sent by the Department of Public Works to the claimant and it inclosed forms of affidavit adopted by the Department for use in such cases and requested their execution. It stated: " Until such affidavits are received, your application for payment is being held up."

To the letter of the State Comptroller reply was made by claimant's counsel May 5, 1933. The letter reads in part as follows: " Under date of April 13, 1933, when our previous estimate was

being withheld on the same grounds, you were advised, through our attorney, that the above-entitled contract was entered into between Carder Realty Corporation and the State of New York on December 17, 1931, more than six months prior to the date when the above amendments to the Labor Law became effective. Your attention is again called to the fact that the above amendments do not apply to or affect this contract."

This is followed with a demand for the immediate payment of the estimate to The Carleton Co., Inc., claimant's assignee, and the demand for payment is coupled with a notice that the failure to make immediate payment shall be deemed a breach of contract on the State's part and that the claimant will not proceed further with the work.

On the same day the Carleton Realty Co., Inc., by its counsel, in form of letter, made demand for the immediate payment of the estimate to it under the assignment made by the claimant to it. Payment did not follow these letters and demands, and on May 9, 1933, the claimant, continuing in the performance of the contract to that date, by its counsel, gave notice in writing to the State Comptroller, the chief engineer of the Department of Public Works and the Department of Mental Hygiene that it declared its contract breached by the State by reason of the State's refusal to pay the estimate (Estimate No. 16), that it would not proceed further with the work and that it would hold the State liable in damages for the breach.

The Department of Public Works on May 10, 1933, acted upon this notice by serving upon the claimant in form of a letter a seven-day default notice provided for in article 26 of the general conditions.

No change was made in claimant's position as outlined in its letter of May 9, 1933; no answer by appearance or otherwise was made by the claimant to the State's letter of May 10, 1933, and on May 20, 1933, the State declared the default of the claimant by a letter from which the following is quoted: "You have failed to improve the progress of the work or to appear at this office today to show cause why your contract should not be declared null and void. Therefore, in view of these circumstances, we declare your contract null and void." By these events and in this manner the contract relations between the claimant contractor and the State were terminated and brought to a close.

There has been a breach of contract; the claimant charges the breach to the State, and the State in turn charges the breach to the claimant.

The position of the claimant is that the State exceeded its powers in law and under the contract terms when it requested or demanded

that the contractor, claimant, furnish affidavits or certificates in regard to unpaid wages and when it refused to advance or stated it would withhold payments upon the contract until such affidavits were furnished. The claimant asserts that it was under no legal or contract obligation to furnish the affidavits, that it acted within its rights in refusing to furnish them and the State in refusing to advance, or its withholding payments for this cause, constituted a breach of contract. The legal ground upon which the claimant takes its stand is that sections 220-a and 220-b of the Labor Law did not affect or apply to its contract, that these sections are prospective and not retroactive.

The State's position is that by law and under the contract terms the claimant was under obligations to furnish the affidavits; that refusing to furnish them gave cause for withholding payments, and that claimant's refusing, in the circumstances, to continue in the performance of the work of its contract constituted a breach of the contract on its part. Relative to sections 220-a and 220-b of the Labor Law, the State contends that these sections are retroactive and affected and applied to the claimant's contract.

Sections 220-a and 220-b were not a part of the Labor Law when this contract was made. These sections were added to the law by chapter 472 of the Laws of 1932. They took effect July 1, 1932. The contract was entered into as before stated December 17, 1931.

Attention may be called here to an evident mistake in the State Comptroller's letter of April 10, 1933. In error this letter asks that an affidavit under the provisions of section 220-b of the Labor Law be furnished. It is section " 220-a " and not " 220-b " that makes provision for the affidavit and no doubt section " 220-a " was intended.

An essential difference between the letter of the State Comptroller, his letter of April 10, 1933, written in relation to Estimate No. 15, and his letter of May 5, 1933, written in relation to Estimate No. 16, should be pointed out.

The letter of April 10, 1933, definitely marks moneys that will be withheld. It says: " In view of the above this office will withhold from your certificate an amount sufficient to cover the claims in question." The letter of May 5, 1933, refers to Estimate No. 16, and says, " which will not be advanced for payment until the necessary affidavit is received."

The difference between these two letters indicates a yielding on the part of the Comptroller.

With the payment of Estimate No. 15 and the contractor's continuing in the work of the contract, the incidents in relation to that estimate were blotted out and as the question of justification

for the action of the contractor in declaring the State in default or the State's declaring a default on the part of the contractor is considered, the inquiry must be confined to the events relating to Estimate No. 16.

It would seem that before a discussion of sections 220-a and 220-b of the Labor Law is taken up, it might be in good order to consider the duties imposed and the powers incident to section 220.

Treating with this section, the question succinctly stated, therefore, is, was it within the power of the Comptroller to request or require the contractor to furnish wage affidavits and to make the advancing of Estimate No. 16 conditioned upon the furnishing of such affidavits and to withhold payment of the estimate until such affidavits were furnished. Was such a request or requirement a reasonable exercise of power within the language and the meaning and intent of the law?

In brief, this section as it relates to the situation at hand provides that every contract to which the State is a party and which may involve the employment of labor must contain a stipulation that no laborer shall be permitted or required to work more than eight hours in any one calendar day and a provision that no laborer shall be paid less than the prevailing rate of wage. As before stated, this contract contained such stipulation and provision. The manifest purpose of this legislation was to protect labor in its hours of employment and in its wages and it is a sound statement that the Legislature intended to give power to do all acts in furtherance of the purposes for which the law was enacted.

To impose upon an awarding body the duty to write into all its contracts those stipulations and provisions and leave it without power to enforce them would result in absurdity. (*Campbell* v. *City of New York*, 244 N. Y. 317, 325.)

The section prescribes duties and imposes penalties; violation of any provision is made a crime punishable by fine and imprisonment, a second conviction in itself resulting in forfeiture of the contract and earned payments; it is most stringent in language and form, and by implication the power of enforcement exists as definitely as if it were emphatically written.

It remains that the means and manner of enforcement must be reasonable and reasonably exercised, and thus is reached the remaining element upon this phase of the case, the question of the reasonableness of the request or requirement of the Comptroller for wage affidavits and his making compliance a condition to advancing the payment.

It cannot be successfully claimed that before an estimate might be advanced or payment made that the Comptroller was without

power to inquire into an alleged breach of any of the conditions of the contract.

A breach arising out of a failure to comply with the hour and wage provisions of the contract would be one of high order and it would be the plain duty of the Comptroller and other State officers to investigate charges of any such violation.

If it may be as claimant's counsel says it evidently was, that the pendency before the Labor Department of proceedings instituted on the complaint of the secretary of a labor union involving a determination under section 220 of the Labor Law as to the prevailing rate of wage that prompted the Comptroller to request the contractor to furnish wage affidavits, then good and sufficient cause clearly existed for the action of the Comptroller and it became his duty to require proof in reasonable form as to the observance of the wage provision of the law and it cannot be rightly said that requiring proof in the form of affidavit would be unreasonable. An added cause for the Comptroller's action, it may be observed, may have been an assignment of moneys and a lien of considerable size, both then on file in his office.

The argument that the major part of the work was being performed under subcontracts and, therefore, to require the contractor to furnish wage affidavits imposed a hardship, is without force. This condition was created by the contractor and it must have been created with full knowledge of the fact that the contract by its very terms imposed upon it full responsibility for all subcontractors. (*Devitt* v. *Schottin*, 274 N. Y. 188, 197.) It follows that though procuring affidavits might have been difficult or burdensome, it was its duty to procure them. It would be strange indeed if by a process of subletting, the provisions of the law and the terms of the contract could be frustrated.

The conclusion is reached that, within the provisions of section 220 of the Labor Law, it was the duty of the State Comptroller and the Commissioner of Architecture to see that the law and the stipulations and provisions of the contract in regard to hours of labor and wages were observed and to that end and purpose to require reasonable proof of their observance, and that proof in form of affidavit was not unreasonable.

The sections of the Labor Law, 220, already considered, and 220-a and 220-b, represent legislation in line with social progress and readjustment. Their design is the protection of labor in its employment. The bed of these sections is found in the amendment of 1905 to section 1 of article 12 of the Constitution. The history of this legislation is so well treated by the late pre-eminent Judge CARDOZO in *Campbell* v. *City of New York* (244 N. Y. 317), that it

would be pointless to do more than call attention to his opinion and the authorities cited and discussed by him.

The clear purpose of sections 220-a and 220-b is to insure compliance with section 220 as that section provides for the payment of a prevailing rate of wage to all labor covered by the section. The way for enforcement is definitely stated. As concerns State contracts, a duty is imposed upon the State Comptroller by section 220-a to require, before any payment is made, of the contractor and each and every subcontractor the filing of a statement in writing certifying to the amount then due and owing all laborers. This plainly would result in withholding moneys and such is the obvious intent of the section. As to section 220-b, it provides in the cases and in the circumstances stated in the section the withholding for the benefit of laborers amounts due for wages and after observing fixed formalities to make payment direct to the laborers.

Before sections 220-a and 220-b became a part of the law, it was the duty of the State officers to see that the hour and wage provisions of the law and the contract were observed. This was so within the four corners of section 220. True it is that the means and manner of enforcement were not dictated. However, they existed and were left to the discretion of the officer charged with the duty.

Sections 220-a and 220-b, limited to the two questions here involved, i. e., the right to request or require wage affidavits and the right to withhold payment until such affidavits were furnished, do no more than confer by statute an already existing right.

If the foregoing reasoning is sound and the conclusions reached are correct, it must be decided that sections 220-a and 220-b are remedial or procedural only and the remedy provided applies to existing as well as future contracts.

The power of the Legislature to enact these sections cannot be successfully challenged in view of section 1 of article 12 of the State Constitution (now Const. art. 9, § 9).

In their enactment it must be presumed that the Legislature was as zealous to give protection to laborers employed upon contracts previously made, but then in course of execution, as to the laborers employed upon contracts subsequently made.

Legislation of this character in no way impairs the contract obligation, nor does it affect any vested right; the contract terms and obligations are not altered in the least. A remedy merely is defined or supplied for an already existing right; a broader and more effective means for enforcement is provided. To this there can be no constitutional objection (*Laird* v. *Carton*, 196 N. Y. 169, 172), and these sections were held constitutional in *Devitt* v. *Schottin* (248 App. Div. 298; affd., 274 N. Y. 188).

From the inception of the contract, a duty and obligation rested upon the contractor to pay its labor and to see to it that all labor employed whether by it or subcontractors was paid.

Repeatedly it has been said that the contractor takes the contract as the State tenders it, with its benefits and burdens, or leaves it altogether. (*Campbell* v. *City of New York*, 244 N. Y. 317, 327.)

Further, it is well understood that there is no such thing as a vested rule of law that would permit a claim that the rule remain unaltered. (*Preston Co.* v. *Funkhouser*, 261 N. Y. 141, 144, citing *Truax* v. *Corrigan*, 257 U. S. 312, 348.)

In *Blauvelt* v. *Woodworth* (31 N. Y. 285), an action to enforce a mechanic's lien, it is said, " every contract is presumed to be executed with reference to existing laws, and subject to such modification, in respect to the remedies of the parties, as may result from subsequent legislation, if free from constitutional objection."

The conclusion about to be reached appears to be well supported by the following authorities to which short reference will be made:

The case of *Sullivan* v. *Brewster* (1 E. D. Smith, 681), cited in the brief of the Attorney-General, involved the constitutionality of the Lien Law. The question in the case was the application of the law to pre-existing contracts and Judge INGRAHAM said: " The effect of applying this statute to contracts in existence at the time of its passage, would be no alteration of the contract, either to the prejudice of the owner or of the contractor. The liability of the owner, as to the amount, is not changed. The proceeding only attaches to the money in his hands, which remains due to the contractor, and applies it to the payment of a debt which the contractor owes and ought to pay. It does not affect the rights of either, but only provides a new remedy for the collection of a debt, which one owes, and the other has the money of the debtor to pay with."

The right to execute a judgment against wages in the instance where the judgment predated the enactment and there Judge BARTLETT says: " Statutes regulating legal remedies are generally construed as operative upon an existing condition of things as well as upon conditions to arise after their enactment." (*Laird* v. *Carton*, 196 N. Y. 169.)

*Sackheim* v. *Pigueron* (215 N. Y. 62) in one of its features related to section 841-b of the Code of Civil Procedure. " Trial and burden of proof of contributory negligence * * * The death of the intestate occurred February 23, 1912. Issue was joined May 17th, 1912, prior to the enactment of the section." In his opinion, Judge HOGAN says (at p. 73): " That provision operated only as a change in procedure, and the mode of attaining or defending rights, and should be construed, in the absence of words of exclusion, to

apply to actions pending at the time when the same took effect. (*Lazarus* v. *Metr. E. R. Co.*, 145 N. Y. 581; *Peace* v. *Wilson*, 186 N. Y. 403; 2 Lewis Sutherland on Statutory Construction [2d ed.], section 674; *Laird* v. *Carton*, 196 N. Y. 169; *Matter of Davis*, 149 N. Y. 539; *People* v. *Qualey*, 210 N. Y. 202, and cases cited by Chief Judge BARTLETT; *Howard* v. *Moot*, 64 N. Y. 262; *Potter* v. *Ogden*, 136 N. Y. 384; *Southwick* v. *Southwick*, 49 N. Y. 510.) "

*Preston Co.* v. *Funkhouser* (261 N. Y. 140), cited by the Attorney-General, dealt with the right to interest on unliquidated claims, particularly, on contracts entered into prior to the passage of the act. Deciding that the section applied to such prior contracts, Judge POUND, in his opinion, says (at p. 144): " The mere fact that the statute is retroactive does not bring it in conflict with the Federal Constitution. (*League* v. *Texas*, 184 U. S. 156, 161, 162.) Nor has a person a vested interest in any rule of law entitling him to have the rule remain unaltered. (*Truax* v. *Corrigan*, 257 U. S. 312, 348);" and again (at p. 145): " Every change in the remedies open to parties to a contract does not constitute an impairment of its obligation. Where the statute deals only with the remedy, the creation of a new and more adequate remedy does not impair the obligation of the contract. (*Sackheim* v. *Pigueron*, 215 N. Y. 62). A debtor has no substantial right to avoid the payment of interest in full."

Subsequently this case went to the United States Supreme Court (290 U. S. 163). From the opinion of Chief Justice HUGHES the following is taken: " The mere fact that such legislation is retroactive does not bring it into conflict with the guarantees of the Federal Constitution (*League* v. *Texas*, 184 U. S. p. 161), and when the action of the Legislature is directed to the enforcement of the obligation assumed by the parties and to the giving of suitable relief for non-performance, it cannot be said that the obligations of the contract have been impaired. The parties making their contract with reference to the existence of the power of the State to provide remedies for enforcement and to secure adequate redress in case of breach (*Henley* v. *Myers*, 215 U. S. 373). * * * The decisive point in the instant case is that the provision for the enlarged remedy was consistent with the substantial rights of the parties under their contract and cannot be regarded as an unreasonable exercise of legislative power."

Adopting the language of Judge BARTLETT in *Laird* v. *Carton* (*supra*), that the sections here considered were " not so much retroactive as active upon an existing condition," and the conclusion is reached that they apply alike to contracts existing at the time the act took effect and to those subsequently made.

At the trial decision was reserved on a motion to strike out records in the Court of Appeals in *Matter of Carder Realty Co.* v. *Perkins.* The records were received over the objection of claimant's counsel. These records have not proven of any value in the investigation of the questions here presented except perhaps to suggest the reason for the State's activities in regard to Estimates Nos. 15 and 16.

An examination of the record upon the trial discloses that the subject of these records was introduced by claimant's counsel upon examination of his witness Carleton; from this it became the right of the Attorney-General to offer them in evidence. While they have not been found of any real materiality, they were properly received and the motion to strike out is denied.

The claim is without merit and should be dismissed.

BARRETT, P. J., concurs.