Bergan, J.
(concurring). Since the respondent argues that the Dormitory Authority is not entitled to sovereign immunity from suits in resistance to the demand for arbitration under its contract with respondent, and since the court is expressly holding that the Authority is “not identical with the State”, it seems injudicious, as well as unnecessary, to venture into the much more difficult and vexatious question whether the power of a State officer to make a contract for the State carries with it by implication the power to submit the State itself to arbitration without express legislative authorization for such a submission. The constitutional and legal questions are of major public consequence and ought hot be decided tangentially and unnecessarily in litigation in which the questions are not decisive.
It seems, moreover, if we' must feel obliged to come to grips *120 with the broad question of sovereign immunity, that the State has not yet permitted its officers to submit it to arbitration and there is no known way in which an arbitration award against the State, if made, would be enf orcible. The statutory mechanism for implementing an award by arbitrators, i.e., “A judgment shall be entered ” (CPLR 7514, subd. [a]) would, in respect of the State, be a procedural futility.
Nor does the general waiver of sovereign immunity in section 8 of the Court of Claims Act, by which the State submits to adjudication of liability by “ the same rules of law as applied to actions ” amount to a general submission to arbitration proceedings. The constitutional base of any claim against the State is audit (N. Y. Const., art. Ill, § 19) and this function is now exercised by the Court of Claims in determining “ claims against the state ” (N. Y. Const., art. YI, § 9), although historically it has been exercised by other auditory agencies and boards.
The insulation of the sovereign itself from adverse adjudication without its consent as to place and form of remedy lies imbedded in general legal theory. “It is an established principle of jurisprudence in all civilized nations ”, Chief Justice Taney noted, “ that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant-in a suit by individuals, or by another State.” (Beers v. State of Arkansas, 20 How. [61 U. S.] 527, 529 [1857].) The court there held that'Arkansas, having consented by statute to be sued to enforce its bonds, could validly and later impose new and more restrictive conditions on the terms of its waiver.
This court has taken particular care to differentiate a liability of the State itself as sovereign to answer in ordinary litigation for the acts of its officers, even where this amounts to the taking of private property, from the individual and personal responsibility of the officers (Pauchogue Land Corp. v. Long Is. State Park Comm., 243 N. Y. 15). There, Pound, J., observed that since “the State may not be sued without its consent” the action against the State Park Commission ‘ ‘ cannot .be maintained ” but the wrongful taking of plaintiff's land by the pub- *121 lie officer “ does not place him under the immunity of the sovereign ” (p. 23).
' It would follow that a State officer hy merely signing a contract with an arbitration clause would be equally incompetent to subject the sovereign to the ordinary compulsion of arbitration processes and its ancillary enforcement procedures in the Supreme Court.
The cases all point this way. “ The problem, therefore, is to determine who is the real defendant in the case at bar”, Judge FiNch wrote in Breen v. Mortgage Comm. (285 N. Y. 425, 429). “ If the real defendant is the State, then, of course, it may be sued only as it has consented to be sued, to wit, in the Court of Claims.”
Even when in form the suit is against State officers but it is actually a “ suit against the State itself ”, it will not lie (Psaty v. Duryea, 306 N. Y. 413, 417). The creditor’s action in Glassman v. Glassman (309 N. Y. 436) was sustained upon the express ground that although the .State Retirement System was a party, the action was in reality not one against the System, but between individuals, and hence ‘ ‘ by that token ’ ’ not an action against the State (p. 441).
Municipal corporations which by law had been made subject to the ordinary jurisdiction of law courts for the enforcement of their contracts, have been held to be answerable to the arbitration process when their officers, acting with their authority, have entered into agreements containing arbitration clauses. The fact that these contracts to arbitrate made with authority were enforced according to their terms at a time when in the performance of sovereign functions the municipal corporations were held free from liability for their torts is not material to the problem. The question is not the State’s immunity from liability; it is, rather, the place and form in which it has given consent that a liability be imposed.
In the case of sovereign liability the authority of the agent to submit the sovereign to arbitration process must be explicit. In this direction is District of Columbia v. Bailey (171 U. S. 161, 176-177) which held the District Commissioners were unable to submit the District to the arbitration of a claim arising from repair of streets ’within .the Commissioners’ jurisdiction, *122 “ There is no authority for holding ”, wrote Mr. Justice White, ‘ ‘ that a mere administrative officer of a municipal corporation, simply because of the absence of a statutory inhibition, has the power, without the consent of the corporation speaking through its municipal legislative body, to bind the corporation by a common law submission” (p. 176). Although the case is not. squarely in point, it illustrates one important policy issue which underlies the present controversy.
The New York cases in which municipal corporations have been required to conform to arbitration clauses stated in contracts duly authorized by the corporation and executed by their officers do not examine the sovereign submission to the arbitration process and certainly do not equate the procedural status of municipal corporations which have submitted to the process with the State which has not submitted. To read the cases will make this perfectly clear. One recent example is Matter of Baker (Board of Educ.) (309 N. Y. 551). The Board of Education had entered into a contract for the construction of a school which contained an arbitration clause. The power of the board to agree to an arbitration was not challenged. The issue was whether a bona fide dispute existed within the arbitration provision and the court held there was such a dispute.
Although municipal corporations, such as the school board in Matter of Baker, have been held bound by their contracts to arbitrate, they have been held so because, unlike the State, they have been made amenable to ordinary suits in contract in 'the general law courts of the State, and a judgment based on an arbitration award would be enforeible against them' in due course. They have been held bound by their arbitration agreements especially when those agreements have had the sanction of legislative authority or have been made by officers who have been vested with that authority.
This is illustrated clearly in one of the early and significant decisions in the General Term affecting the power of a city to agree to arbitration of a dispute arising from a paving contract (Brady v. Mayor of Brooklyn, 1 Barb. 584 [1847]). There a dispute with a contractor had been submitted to arbitration and the award was approved by the Common Council of the city. The council’s power to make the contract and to pay for *123 the public work involved implied its power to arbitrate, and the approval of the arbitration award by the council was held binding on the city.
The actions before the court in Campbell v. City of New York (244 N. Y. 317) were brought by taxpayers to test the constitutionality of the prevailing wage requirements of public contracts as applied to the City of New York,’and this was the main issue litigated. It was held collaterally the arbitration provision in the contract at issue did not invalidate it at the suit of the taxpayers and that on the record before the court, this provision was within the authority of the city officers who made the contract.
The basis for the general statement by Judge Cardozo (p. 331) that there was nothing illegal about the arbitration clause was Matter of Berkovitz v. Arbib & Houlberg (230 N. Y. 261); a decision which was concerned with arbitration between private parties. There is not the slightest suggestion in Campbell v. City of New York that it approved any general authorization by State officers in the absence of explicit legislative authorization to submit the State itself to private arbitration.
It is significant to notice that in Merritt-Chapman & Scott Corp. v. Public Utility Dist. No. 2 (319 F. 2d 94) the question of arbitration was not decisive (p. 108). The problem was whether a levy in New York on property of the public utility district was good and it was held that unless on remand it be found that the levy interfered substantially with the public duties of the district the levy would be good because, in general, the district fell in the same “ category as municipalities, counties, villages” (p. 103). What seems particularly important for our'purposes is the statement of MediNA, J. t “We are not here concerned with the doctrine of sovereign immunity, as we would be if the defendant were a member of the family of nations or one of the sovereign states of the United States of America ” (p. 103).
In People ex rel. Benedict v. Supervisors (24 Hun 413) the power of the Board of Supervisors to submit a disputed claim to a Referee was discussed, but the decision did not turn on this power and the discussion of it was treated by Mr. Hun, the reporter, as dictum (p. 414). The case cannot be read to *124 support a power by State officers generally to submit the State itself to private arbitration without legislative authorization. Decisions in State Highway Dept. v. MacDougald Constr. Co. (189 Ga. 490) and State ex rel. M. E. Murphy Co. v. Donahey (98 Ohio St. 442) turn merely on agreements that engineers’ quantities be accepted by the parties and there was no problem of sovereign submission in either case.
Finally, the words of Judge Earl in Danolds v. State of New York (89 N. Y. 36, 44) that the sovereign “ must be governed by the same rules of common honesty and justice which bind individuals ” and, quoting Judge Allen in People v. Stephens (71 N. Y. 527, 550) that the rights of the sovereign in its contracts “ must be adjusted upon the same principles as if both contracting parties were private persons ”, must be read in the context of the question before the court and be measured against what was actually decided.
Most lawyers agree to general legal principles in the abstract. It is the hard application to real cases that gives trouble. The Danolds case was a claim against the State in its Board of Audit, a predecessor of the Court of Claims. It considered the question whether a provision of the contract excluding prospective profits if the State suspended work on the contract prevented- the assertion of a claim for prospective profits based on the entire repudiation of the entire contract. The case had nothing, to do with arbitration, and Judge Allen’s case was even more remote from that question and involved an action by the State to recover damages against contractors for illegal combinations to prevent competition in bidding for canal contracts.
The order should be affirmed on the sole ground that the Dormitory Authority, having a separate identity from the State, was bound by its contractual agreement to arbitrate.
Chief Judge Desmond and Judges Fuld, Burke and Keating concur with Judge Scileppi; Judge Van Voorhis concurs in result; Judge Bergan concurs in a separate opinion.
Order affirmed.